413 So.2d 749 (1982)
Bonnie Lou Brodie Chapman LAMM, Petitioner,
v.
Joe Allen CHAPMAN, Respondent.
No. 59922.
Supreme Court of Florida.
March 11, 1982.
Rehearing Denied May 26, 1982.
Joseph R. Boyd and W. Crit Smith of Boyd & Smith, Tallahassee, and Chriss Walker, Dept. of Health and Rehabilitative Services, Child Support Enforcement, Tallahassee, for petitioner.
Elizabeth S. Baker and Stephen Maher, Legal Services of Greater Miami, Inc., Miami, and Kathy Hamilton of Carres, Gamble & Hamilton, Coral Gables, for respondent.
*750 OVERTON, Judge.
This is a petition to review the decision of the Third District Court of Appeal reported as Chapman v. Lamm, 388 So.2d 1048 (Fla.3d DCA 1980), which assertedly invalidated a remedy provided under section 409.2561, Florida Statutes (1979), which conflicts with the Second District Court of Appeal's holding in Andrews v. Walton, 400 So.2d 790 (Fla.2d DCA 1981). We have jurisdiction under article V, section 3(b)(3), Florida Constitution (1980).
The district court in Chapman determined that sections 409.2561(1)-(3) infringe upon the constitutional right to be free from imprisonment for debt prescribed by article I, section 11, Florida Constitution (1972), to the extent those sections allow the department to institute civil contempt proceedings to collect child support arrearages in repayment of state public assistance payments. Sections 409.2561(1)-(3) authorize the Florida Department of Health and Rehabilitative Services to seek reimbursement from a responsible parent of state public assistance funds paid for the benefit of a dependent child when the parent has failed to pay court-ordered child support. Section 409.2561(3)(c) specifically states that the department may pursue "civil and criminal enforcement of support obligations." It should be noted that the real party in interest as petitioner in this case is not Bonnie Lamm, but is the State of Florida through the Department of Health and Rehabilitative Services.
We hold, in agreement with the Second District Court in Andrews, that the department can constitutionally assert the custodial parent's right to enforce the child support obligation through a civil contempt proceeding and disapprove that portion of the Chapman opinion which holds to the contrary. We affirm, however, the finding that, under the circumstances of this case, the trial judge could not properly commit respondent to jail for contempt.
The relevant facts are not in dispute. Petitioner, Bonnie Lou Brodie Chapman Lamm, and respondent, Joe Allen Chapman, were married in 1972; a child, Joe Allen Chapman, Jr., was born in early 1973; a final judgment of dissolution was entered on October 10, 1973, after default by respondent. The final judgment contained a provision requiring respondent to pay $27.50 per week for the support of his minor child. Respondent Chapman was not personally served with notice of the dissolution proceeding, nor does the record show he was personally served with a copy of the final judgment. The affidavit for service of process by publication, filed in 1973, showed that respondent resided in Louisiana.
Respondent did not make any payments to his ex-wife for child support. In May, 1979, the state attorney, acting on behalf of the state and as representative of petitioner pursuant to section 409.2561, filed a petition with the circuit court alleging that Ms. Lamm received public assistance moneys under the Aid to Families with Dependent Children program. The state requested that all support payments from Mr. Chapman be made through the circuit court clerk's office with the clerk directed to forward the payments to the Department of Health and Rehabilitative Services. This petition was granted on May 11, 1979. In June, 1979, the state attorney filed a motion for contempt against respondent, who was then residing in Fort Pierce, Florida, for failure to make child support payments.
At the evidentiary hearing on the contempt motion, both respondent and petitioner testified. Neither refuted the state attorney's assertions that respondent's total child support arrearage was $8,135 and that the state had paid petitioner $2,987.50 in public assistance for which it sought reimbursement. The evidence established that respondent was a fishing boat captain; his income tax return for the previous year showed that his gross salary had been approximately $4,379. It was also revealed at the hearing that respondent had remarried and that his second wife was seven months pregnant. On these facts, the trial judge found that respondent had the ability to pay child support, had refused to do so, and was in willful contempt of court. The *751 judge then ordered that respondent be confined to jail for ninety days, though he could purge himself of the contempt by paying $8,135, $2,987.50 of which was to be paid to the State of Florida.
On appeal, the district court reversed the commitment order on three alternative grounds. We agree with the first two findings: (1) the trial court did not acquire personal jurisdiction over respondent in the dissolution proceeding and, therefore, the child support order could not be enforced by a contempt proceeding, Peacock v. Peacock, 160 Fla. 630, 36 So.2d 206 (1948); Gelkop v. Gelkop, 384 So.2d 195 (Fla.3d DCA 1980); Wood v. Wood, 276 So.2d 527 (Fla.3d DCA 1973); and, (2) the record did not support the determination that respondent had the ability to pay the child support, see Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976).
The third ground upon which the district court reversed the contempt order is of considerable significance to the State of Florida. The district court expressly found that the order holding respondent in contempt was constitutionally impermissible because it imprisoned him for money owing to the State of Florida in violation of the guarantee against imprisonment for debt in article I, section 11, Florida Constitution. The district court recognized that the obligation to pay child support or alimony is not considered a debt for purposes of article I, section 11, but is considered a duty owed to the family which may be enforced by contempt proceedings. Faircloth. The district court said, however: "When the obligation has been converted into a debt to a third person, it no longer carries the public necessity for enforcement by imprisonment... . The fact that the State is the third party does not transfer to the State a greater right to the remedy of contempt than that held by a private litigant." 388 So.2d at 1049 (citations omitted). This holding substantially limits the state's choice of remedies when pursuing "civil ... enforcement of support obligations," section 409.2561(3), by prohibiting the state's use of contempt proceedings.
Respondent argues that the language of section 409.2561(1) confirms the correctness of the district court's holding. That section states: "Any payment of public assistance money made to, or for the benefit of, any dependent child creates a debt due and owing to the department by the responsible parent... ." Respondent asserts that the use of the term "debt" indicates the legislature's intent to prohibit the state from using contempt to secure reimbursement of the moneys owed to it. Respondent further argues that State ex rel. Cahn v. Mason, 148 Fla. 264, 4 So.2d 255 (1941), controls the disposition of this case. In Cahn, this Court granted a writ of habeas corpus to an ex-husband who had been jailed for contempt. As part of the property settlement, the ex-husband had agreed to assume payments on certain promissory notes and the final divorce decree had required him to make those payments directly to the bank. We found that the ex-husband's liability on the notes constituted a debt owed to the bank even though the liability arose out of a marital obligation formalized in the divorce decree. Since the debt was owed to a third party rather than to the ex-wife, we concluded that the ex-wife could not seek a contempt order to force her ex-husband to make the payments to the bank.
We reject the district court's decision on this issue, as well as respondent's arguments. The error in the argument that the legislature intentionally used the term "debt" in section 409.2561(1) to restrict the state's use of civil contempt becomes clear upon examination of the entire statutory scheme for Aid to Families with Dependent Children. In sections 409.235-.2597, Florida Statutes (1979), the legislature created a comprehensive program to furnish financial and rehabilitative assistance to dependent children and established guidelines for program entitlement and payment. The legislature also expressed the intention to limit the expenditure of public funds for this program by stating: "It is declared to be the public policy of this state that this act be construed and administered to the end that children shall be maintained from the *752 resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through public assistance programs." § 409.2551, Fla. Stat. (1979).
Section 409.2561 is designed to implement this policy by laying out a procedure whereby the state is authorized to fulfill its responsibilities both to dependent children and to the taxpayers. Section 409.2561 consists of three interrelated provisions: subparagraph (1) directs that the department obtain, from those responsible parents who have the ability to pay, reimbursement for public assistance moneys expended to benefit dependent children, while, at the same time, giving priority to securing continuing reasonable child support from the responsible parent; subparagraph (2) specifies that any judicial determination of the responsible parent's liability to repay the state be based on the parent's ability to pay; and, subparagraph (3) provides that the acceptance of public assistance effects an assignment to the state of the recipient's interest in child support in the amount of public assistance paid and allows the state to act for the recipient in all matters relating to child support, including the pursuit of civil remedies to enforce the support obligation.[*]
After considering all of the provisions of section 409.2561, together with the declared public policy regarding child support, we conclude the legislature did not intend to prohibit the state from using civil contempt as one means of securing repayment of public moneys and of ensuring that responsible parents fulfill their obligation to provide continuing reasonable child support. In our view, the term "debt" in section 409.2561(1) was used in the broad sense to indicate that a responsible parent who has the ability to pay child support will not be allowed to avoid this obligation solely because the state, through necessity, has provided public assistance. By the express authority of section 409.2561(3)(c), the state is empowered to act in the place of the public assistance recipient in seeking civil enforcement of the child support obligation; no limitations are placed on the state's choice of remedies. We construe section 409.2561(3)(c) to authorize the state's use of the identical remedies against the responsible parent as are available to the child's custodian, including, but not limited to, the use of civil contempt. We agree with the decision *753 of the Second District Court of Appeal in Andrews v. Walton that the assignment of the child support obligation to the state, under section 409.2561(3), does not change the nature of the obligation, nor does it limit the means by which the obligation may be enforced. Of course, the requirements of Faircloth, that the responsible parent have the ability to pay but willfully refuse to do so, apply to any contempt order obtained by the state.
It is important, in this context, to consider the unique relationship of the state to the family unit. As a matter of public policy, the state has historically occupied two roles with respect to family matters: that of an interested party in matters pertaining to the custody, support, and well-being of children and that of the sovereign having a parens patriae interest in the welfare of the minor child. We have said generally that the legislature has the power to regulate, modify, or abolish rights growing out of a marriage relationship without violation of any constitutional provision. Rotwein v. Gersten, 160 Fla. 736, 36 So.2d 419 (Fla. 1948). While it is true that, as in Cahn, a private third party cannot use civil contempt to enforce a debt which is grounded in an assignment of a financial obligation resulting from a marriage dissolution or child support order, the state is not the same as a third party bank. The state is acting both as an interested party and as parens patriae to further the best interest of the dependent child. Cahn does not control this situation.
We note that, although contempt may be the most generally used means of enforcing the child support obligation, it is not the only remedy available to the state or to the child's custodian. Either could obtain a judgment for an arrearage of child support. In the event that such a judgment is obtained, it constitutes a judgment debt upon which execution may issue and for which traditional enforcement remedies, including liens and levies, may be utilized. The contempt power of the court is no longer available to enforce the child support obligation for those arrearages which have been reduced to a judgment debt for which execution may issue, regardless of whether the judgment was obtained by the department or by the custodial parent.
We hold that the acceptance of public assistance for the support of a dependent child vests in the department the authority to proceed with all remedies available to the child's custodian. The state must have the power to ensure that the responsible parent, to the extent that he or she has the ability to pay, reimburse the state for public assistance moneys expended for the benefit of a dependent child and provide continuing reasonable child support. The result of the district court's decision in this case is affirmed, but, for the reasons expressed, the opinion is approved in part and disapproved in part. We expressly approve the decision of the Second District Court of Appeal in Andrews v. Walton and disapprove the decision of the Third District Court of Appeal in Mackey v. State ex rel. Mackey, 402 So.2d 41 (Fla.3d DCA 1981), which reversed a contempt order in reliance on that court's holding in Chapman.
It is so ordered.
ADKINS, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, C.J., concurs in part and dissents in part:
"I concur with the majority's approval of the findings (i) that the trial court did not acquire personal jurisdiction over respondent in the dissolution proceedings, thereby making the child support order unenforcible by contempt proceedings, and (ii) that there is no record support for the determination that the respondent had the ability to pay the child support, and, hence, reversal of the trial court's contempt order was correct. However, I dissent from the majority's holding with respect to article I, section 11, Florida Constitution. I would approve the district court opinion in toto."
NOTES
[*] Sections 409.2561(1)-(3) provide as follows:

Public assistance payments debt to department; assignment of rights; subrogation.  (1) Any payment of public assistance money made to, or for the benefit of, any dependent child creates a debt due and owing to the department by the responsible parent in an amount equal to the amount of public assistance so paid, except that if there has been a prior court order or final judgment of dissolution of marriage, the debt is limited to the amount provided by such court order or decree. If there is no prior court order, the court shall establish the liability of the responsible parent, if any, for repayment of public assistance moneys paid. Priority shall be given to establishing continuing reasonable support for the dependent child. The department may petition the appropriate court for modification of a court order on the same grounds as either party to the cause and shall have the right to settle and compromise actions brought pursuant to this act.
(2) In determining the amount to be paid by the responsible parent, the court shall consider the recommendation, if any, of the department, which recommendation shall be based on the income, earning capacity, resources, and needs of the responsible parent and the needs of the dependent child for whom support is sought.
(3) By accepting public assistance for, or on behalf of, a dependent child, the recipient is deemed to have made an assignment to the department of any right, title, and interest in any child support obligation owed to or for said child up to the amount of public assistance money paid for, or on behalf of, the dependent child. The recipient is also deemed to have appointed the department as his attorney in fact to act in his name, place, and stead to perform specific acts relating to child support, including but not limited to:
(a) Endorsing any draft, check, money order, or other negotiable instrument representing child support payments which are received on behalf of the dependent child as reimbursement for the public assistance moneys previously or currently paid.
(b) Compromising claims.
(c) Pursuing civil and criminal enforcement of support obligations.
(d) Executing verified complaints for the purpose of instituting an action for the determination of paternity of a child born, or to be born, out of wedlock.