428 So.2d 663 (1983)
Albert ANDREWS, Jr., Petitioner,
v.
Ada Mae WALTON, and the Florida, Department of Health and Rehabilitative Services, Respondents.
No. 61051.
Supreme Court of Florida.
March 24, 1983.
*664 Stuart E. Soff, Fla. Rural Legal Services, Inc., Belle Glade, for petitioner.
Charles L. Carlton of Carlton & Carlton, Lakeland, Joseph R. Boyd, W. Crit Smith of Boyd & Smith, and Chriss Walker, Office of Child Support Enforcement, Dept. of Health and Rehabilitative Services, Tallahassee, for respondents.
OVERTON, Justice.
We grant the petition for clarification and rehearing, both parties having requested that we address the issue of petitioner's right to counsel in this civil contempt proceeding for failure to pay child support. Accordingly, we vacate our summary affirmance rendered July 15, 1982.
The original petition sought review of the decision of the Second District Court of Appeal in Andrews v. Walton, 400 So.2d 790 (Fla. 2d DCA 1981), which was in direct conflict with the opinion of the Third District Court of Appeal in Chapman v. Lamm, 388 So.2d 1048 (Fla. 3d DCA 1980), aff'd in part, rev'd in part, 413 So.2d 749 (Fla. 1982). The point of conflict concerned whether sections 409.2561(1)-(3), Florida Statutes (1979), granting the Department of Health and Rehabilitative Services (the department) power to institute civil contempt proceedings *665 to collect child support arrearages in repayment of public assistance payments, violated the right to be free from imprisonment for debt guaranteed by article I, section 11, Florida Constitution. We resolved the conflict in our recent opinion in Lamm v. Chapman, 413 So.2d 749 (Fla. 1982), in which we approved the decision in Andrews and disapproved the decision in Chapman holding that
the acceptance of public assistance for the support of a dependent child vests in the department the authority to proceed with all remedies available to the child's custodian. The state must have the power to ensure that the responsible parent, to the extent that he or she has the ability to pay, reimburse the state for public assistance moneys expended for the benefit of a dependent child and provide continuing reasonable child support.
Lamm, 413 So.2d at 753.
Petitioner asserts that, because he was "faced with incarceration and thus a fundamental deprivation of his liberty," his right to due process under the fourteenth amendment was violated when the trial court failed to advise him of his right to counsel and to provide him counsel in the civil contempt proceedings. In the instant case, the trial court sentenced petitioner to thirty days in jail for contempt, finding that petitioner had the ability to pay the court-ordered $15 a week in child support since he was earning take-home pay of $230 every two weeks; that he willfully refused to pay; that he could purge himself with payment of $300 of the $544 total arrearage; that he had the ability to pay the purge amount; and that the sentence would be postponed to allow him time to use his next paycheck to purge himself of contempt.
In Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the United States Supreme Court refused to adopt a per se rule that due process requires appointed counsel for indigents in parental termination cases and reemphasized the principle that the right to due process is the right to judicial processes which are "fundamentally fair." This concept of fundamental fairness is the basis for the presumption that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." Id. at 26-27, 101 S.Ct. at 2159.
Without question, anyone facing contempt charges, either criminal or civil, is under threat of imprisonment. But a distinction has historically been drawn between criminal contempt, which is punitive in nature, and civil contempt, which is remedial or coercive. Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977); South Dade Farms, Inc. v. Peters, 88 So.2d 891 (Fla. 1956); In re S.L.T., 180 So.2d 374 (Fla. 2d DCA 1965). Criminal contempt proceedings are "maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court." Pugliese, 347 So.2d at 424. Criminal contempt proceedings are "effectively criminal in nature and persons accused of [criminal] contempt are as much entitled to the basic constitutional rights as are those accused of violating criminal statutes." Aaron v. State, 284 So.2d 673, 675 (Fla. 1973) (footnote omitted); see Fla.R.Crim.P. 3.830 and 3.840.
A civil contempt proceeding is very different in origin and purpose from a criminal contempt proceeding:
If the purpose of the proceedings is to coerce action or non-action by a party, the order of contempt is characterized as civil. This type [of] contempt proceeding is ordinarily instituted by one of the parties to the litigation who seeks to coerce another party to perform or cease performing an act. The order of contempt is entered by the court for the private benefit of the offended party. Such orders, although imposing a jail sentence, classically provide for termination of the contemnor's sentence upon purging himself of the contempt. The sentence is usually indefinite and not for a fixed term. Consequently, it is said that the contemnor "carries the key to his cell in his own pocket."
*666 Pugliese, 347 So.2d at 424. The sixth amendment guarantees provide the source of the constitutional protections accorded a defendant in a criminal contempt proceeding because of its punitive character; the defendant in a civil contempt proceeding, on the other hand, because he has the ability to control the act which causes release from jail, is guaranteed a proceeding which is "fundamentally fair" under the due process clause of the fourteenth amendment. In re D.B. and D.S., 385 So.2d 83, 89 (Fla. 1980).
An action for contempt for failure to pay child support is classically a civil contempt action. The due process doctrine of "fundamental fairness" was incorporated into the criteria which serve as a prerequisite to imprisonment for non-payment of child support in Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976). In that case, we held that, to satisfy due process, a person could not be adjudicated guilty of failing to pay alimony or child support and sentenced to imprisonment conditional upon payment unless the trial court finds that the person (1) has the ability to make the payments; and (2) willfully refuses to pay. Consequently, if the requirements of Faircloth are met, an indigent parent cannot be imprisoned for failure to pay child support because, upon a showing of indigency, the trial court cannot make the essential finding that the indigent parent has the ability to pay. Since the parent who is unable to acquire the funds necessary to purge himself will not be subject to imprisonment in non-support civil contempt proceedings, "fundamental fairness" is satisfied and due process does not give rise to the right to appointed counsel. See Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) (even under the sixth amendment protections in criminal cases, actual imprisonment is the line defining the constitutional right to appointment of counsel). Therefore, we find that there are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.
There is no showing whatsoever in this record that petitioner, who testified that he was earning take-home pay of $230 every two weeks, was unable to pay $15 per week in child support or to pay the purge amount of $300. Petitioner asserts in his brief that he was justified in his failure to pay because he had to support his present family, which he acquired after fathering the child with which we are concerned in this case, and he believed, therefore, that he should be relieved of his obligation to pay court-ordered child support for his illegitimate child. These facts have not been made part of the record of this cause, but, regardless, petitioner's argument does not demonstrate his inability to pay child support, but rather displays an irresponsible attitude both to his child and to the taxpayers of this state who, because of his default, must provide the public assistance moneys necessary to support the child he fathered.
We find that the trial court correctly applied the requirements of Faircloth in determining that petitioner had the ability to pay child support and willfully refused to pay. The trial court, by delaying the effect of the sentence until after petitioner received a paycheck and setting $300 as the amount necessary for petitioner to purge himself, an amount less than the actual arrearage, made a conscientious and express finding that petitioner had the ability to pay. We conclude that the trial court proceeding in this case met the due process standard of "fundamental fairness."
For the reasons expressed, we approve the district court's conclusion that the judgment of the trial court be affirmed.
It is so ordered.
ALDERMAN, C.J., and ADKINS, McDONALD and EHRLICH, JJ., concur.