429 So.2d 424 (1983)
Steven L. ROBBINS
v.
Nancy A. ROBBINS.
Freddie J. Rowell
v.
Marjorie SMITH.
Michael RICHARDSON
v.
Joyce TILLMAN.
Dennis A. PERRYMANN
v.
Kelly JONES.
Danny M. MOSS
v.
Joann REID.
Robert MALONE
v.
Gail MALONE.
Harvey Lee LITTLE
v.
Veronica EVERETT.
Jimmie KITCHEN
v.
Esther Diann KITCHEN.
Melvin C. KING
v.
Rosiland HEPBURN.
Raul JAIMERENA
v.
Margarita CASTILLA.
Reginald JACKSON
v.
Linda HICKS.
Louis JACKSON, Jr.
v.
Shirley Ann JACKSON.
Arthur HOLMES, Jr.
v.
Gloria HOLMES.
Nathaniel HOLIFIELD
v.
Dorothea HOLIFIELD.
Timothy GRAY
v.
Brenda GRAY.
Pedro Juan DIAZ
v.
Adelina BURGOS.
Steve CREWS, Jr.
v.
Daisy Crews BAIN.
Robert HIXSON
v.
Mary Dean HELMS.
Ernest BURKE
v.
Doris HARRIS.
Earl COLSTON
v.
Carolyn J. COLSTON.
Benjamin BUCHANAN
v.
Valerie JACKSON.
Jimmy BARRON
v.
Harriette E. BATTS.
Johnny B. WALKER
v.
Mary Bell WALKER.
Mitchell WARE
v.
Dorothy WARE.
Cleve CARTER, Jr.
v.
Izella PASCO.
James H. YOUNGBLOOD
v.
Arsimmer YOUNGBLOOD.
Bobby Lee GROSS
v.
Jean SHAW.
Frederick GROGAN
v.
Elissa GROGAN.
Raymond MADDOX
v.
Connie MADDOX.
George R. COREY
v.
Sheryl RUSSELL.
Armondo DELVALLE
v.
Maria MARTINEZ.
Dennis RUSHION
v.
Jestine HENDRIETCH.
Carl JACKSON
v.
Deborah A. WIGGINS.
Guillermos RAMOS
v.
Marilyn RAMOS.
Lory OWENS
v.
Margaret OWENS.
Joseph A. GILBERT
v.
Deborah A. GILBERT.
Wayne A. ZIDIK
v.
Sharon A. ZIDIK.
Theodore KNIGHT
v.
Gloria D. KNIGHT.
Nos. 81-2063 to 81-2065, 81-2067, 81-2068, 2326, 81-2069 to 81-2071, 81-2072, 2325, 81-2073 to 81-2088, 81-2089, 2646, 81-2202 to 81-2204, 81-2222, 81-2223, 81-2229 to 81-2232 and 81-2254 to 81-2256.
District Court of Appeal of Florida, Third District.
March 31, 1983.
*426 Carres, Gamble & Hamilton and Kathy Hamilton, Coral Gables, for appellant in No. 81-2075.
Fine, Jacobson, Block, Klein, Colan & Simon, Miami, for appellant in No. 81-2222.
Elizabeth S. Baker; Stephen T. Maher, Miami, for all other appellants.
Law Office of Melvin A. Rubin, Miami, for appellees.
Jim Smith, Atty. Gen., and Anthony C. Musto, Asst. Atty. Gen., as amicus curiae.
Before HENDRY, HUBBART and BASKIN, JJ.
BASKIN, Judge.
Appellants are thirty-eight fathers who were held in contempt of court for failing to pay child support. They seek to overturn their convictions which resulted in jail sentences and adverse judgments for child support arrearages. They contend that the court's method of conducting the proceedings deprived them of due process of law. Citing the assembly-line system utilized by *427 the court, the cursory hearings in which they were unable to present or defend their cases, and the lack of record support for the trial court's findings, they claim deprivation of constitutional rights. Upon review of the available records, we conclude that appellants were indeed deprived of due process of law. Accordingly, we reverse.
The issues raised in these consolidated appeals pertain to the quality of the hearings afforded by the court in its enforcement of child support orders under Chapter 409, Florida Statutes (1979). At issue are questions pertaining to the propriety of assembling cases and of conducting child support contempt hearings in sequence, with a very short period of time allotted each case; of deciding issues on unsworn testimony and with limited evidence; and of proceeding without appointing counsel or advising of the right to secure private counsel. The answers to these questions are governed by due process of law.
In 1981, the State of Florida initiated approximately 480 contempt actions predicated upon failure by the fathers to comply with previously entered child support orders. The proceedings instituted by the state were treated as civil contempts filed on behalf of parents seeking to obtain child support. All of the cases but one were assembled before a single judge who heard and disposed of them consecutively during a four-day period. A contempt motion is customarily heard by the judge who presided at the dissolution proceeding and who thereby acquired some knowledge of the parties' circumstances during the development of the case. In these cases, however, the judge who decided appellants' contempts had not had previous contact with the litigants.

THE HEARINGS
Respondents were served notices of hearing on motions for contempt advising them to bring financial records. The notices did not state the amounts or due dates of unpaid sums. Each hearing lasted no more than a few minutes. During the hearings, no oaths were administered to any witness or litigant, thus no sworn testimony was presented. Consequently, no opportunity for cross-examination existed. A court reporter was not present, and there are no recorded transcripts of the hearings. No documents were admitted into evidence. According to the procedure followed by the court, first the assistant state attorney read a case history from a "depository" computer printout.[1] The trial court then reviewed the fathers' financial statements, many of which had been prepared under the guidance of "paralegals" who were really clerks in the office of the state attorney prosecuting the fathers. In some cases, the mother explained matters to the court. The court asked each father if he had made his payments, often commenting that had the court been in the same position, the court would have evaluated its priorities differently. Dissatisfied with the responses, the court held each of the appellants in contempt.
Respondents were not advised of a right to obtain counsel; only one father appeared with privately retained counsel. Whether through ignorance or lack of opportunity, respondents did not make objections. *428 Among the defenses rejected by the court were heart surgery, followed by complications; failure to obtain employment as a result of injury; subsequently obtained dependents; lack of work; and the fact that the father had custody of the child. In at least one instance, the court refused to consider receipts for payment because the respondent had made payments to the mother instead of to the clerk of the court.
During the four-day period, the court heard over 250 motions for contempt. At the conclusion of each hearing, the trial court signed a form order. Each order recited that the respondent "has and has had the ability to make the child support payments required by prior order of court, but has failed and refused to do so and is therefore in willful contempt." In a blank space, the court entered the amount and method for payment of arrearages, deciding these sums without additional testimony. The court filled in blank spaces indicating the period of incarceration imposed and the monetary amount required to purge the contempt. Respondents who failed to pay immediately were jailed. Despite having found that the fathers were able to pay, the court declared them to be insolvent, presumably for appellate purposes. The appeals have been advanced by Legal Services of Greater Miami, Inc.
Utilizing these procedures, the court disposed of approximately 250 cases.[2] The court decided approximately 140 contempt motions without ordering commitment to jail. Between 100 and 135 respondents were committed to jail, and all but one of the appellants were sentenced to terms of imprisonment. Appellants have served their sentences but have pursued these appeals in the hope of overturning the contempt judgments as well as the amounts of arrearages declared due. There appears to be little question that the court's methods were effective. According to appellees, the court collected over $140,000 during these proceedings. Despite the effectiveness of this mode of enforcement, we wholeheartedly disapprove the form of the hearings which we believe disregarded appellants' rights.
In discussing the errors which we believe require reversal, we first review the statutes under which the proceedings were maintained. Section 409.245, Florida Statutes (1979) authorizes the Department of Health and Rehabilitative Services to assist applicants in bringing proceedings against parents who have defaulted in their support obligations. It provides, in part:
409.245 Dependent children; action for support.  No application to the Department of Health and Rehabilitative Services for any aid to dependent children which is within its power to grant shall be approved unless such applicant shall have instituted in the proper court, and in good faith prosecutes, a civil action for support from persons liable for the support of applicant's dependent child as the case may be, whenever such cause of action exists. The department shall assist applicants in bringing proceedings to enforce support by such persons who may be liable for the support under the laws of this state.
Upon the establishment of a prima facie case, the defaulting party has the burden of presenting a valid excuse for the default.
Proceedings to enforce child support orders are designed to be informal in order to assist parents in securing child support payments promptly without great cost. Section 409.2551, Florida Statutes (1979) describes the legislative intent behind social and economic assistance laws:
409.2551 Legislative intent.  Common law and statutory procedures governing the remedies for enforcement of support for financially dependent children by responsible parents have not proven sufficiently effective or efficient to cope with the increasing incidence of financial dependency. The increasing workload of courts, prosecuting attorneys, and the Attorney *429 General has resulted in a growing burden on the financial resources of the state, which is constrained to provide public assistance for basic maintenance requirements when parents fail to meet their primary obligations. The state, therefore exercising its police and sovereign powers, declares that the common law and statutory remedies pertaining to family desertion and nonsupport of dependent children shall be augmented by additional remedies directed to the resources of the responsible parents. In order to render resources more immediately available to meet the needs of dependent children, it is the legislative intent that the remedies provided herein are in addition to, and not in lieu of existing remedies. It is declared to be the public policy of this state that this act be construed and administered to the end that children shall be maintained from the resources of responsible parents, thereby relieving, at least in part, the burden presently borne by the general citizenry through public assistance programs.
Although child support enforcement proceedings may be informal and the standard of conduct applicable to civil contempts more relaxed than in criminal contempt proceedings, due process requirements must be met. Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). A fundamental due process requirement is a hearing, one that may be neither sham nor pretense. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Due process mandates that "state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions... ." Herbert v. Louisiana, 272 U.S. 312, 317, 47 S.Ct. 103, 104, 71 L.Ed. 270, 273 (1926).
In the cases before us, the hearings did not comport with due process of law. While we accept a degree of informality in this type of proceeding, we must deplore the total absence of such forms of legal process as oaths, court reporters, witnesses, and rules of evidence. Not only did the trial court accept unsworn statements as true, the court failed to make certain that respondents were fully aware of the right to defend and to mitigate the accusations against them through witnesses, testimony, cross-examination, and objection. On the contrary, some respondents were frustrated in their attempts to present evidence. It is clear that the contempt hearings were directed toward achieving compliance with prior court orders, often through intimidation, and with little consideration to any disability on the part of the responding party. To the inexperienced litigant, the court's demeanor may well have appeared less than impartial. The assembly-line procedures, which resulted in the completion of a great many hearings in the shortest possible time and led to the sending of 130 fathers to jail, lost sight of constitutional guarantees. When a respondent asserts financial inability to comply with a support order, due process requires, at a minimum, an evidentiary hearing before he may be found in contempt. Barreca v. Barreca, 77 A.D.2d 793, 430 N.Y.S.2d 739 (1980).

THE RIGHT TO COUNSEL
While we believe respondents would have benefited from advice that they could obtain their own counsel, we find no merit in the argument that the failure to appoint counsel constituted error. It is probable that counsel would have directed the court's attention to procedural due process requirements and might have prevented the unwarranted imposition of jail sentences upon indigent contemners, but the supreme court has decided the issue of appointment of counsel adversely to appellants' contentions. Andrews v. Walton, 428 So.2d 663 (Fla. 1983). The Andrews decision forecloses our adopting the standard of State ex rel. Dept. of Human Services v. Rael, 97 N.M. 640, 642 P.2d 1099 (1982), which requires appointment of counsel in complex cases in order to insure competent presentation of the merits.

*430 THE FINDINGS
Next, we address the departure from due process evident in the orders entered by the court. In order to comport with due process, "orders holding a person in contempt must show on their face the requisites for their validity and the record must support these elements." (emphasis added). Murphy v. Murphy, 370 So.2d 403 (Fla. 3d DCA 1979), cert. denied, 383 So.2d 1199 (Fla. 1980); accord Chapman v. Lamm, 388 So.2d 1048 (Fla. 3d DCA 1980), rev'd on other grounds, 413 So.2d 749 (Fla. 1982); Noorthoek v. Superior Court, 269 Cal. App.2d 600, 75 Cal. Rptr. 61 (1959).
Before a respondent may be held in contempt for failure to comply with a court order, the court must be satisfied that he had the ability to pay and willfully refused. Ratner v. Ratner, 297 So.2d 344 (Fla. 3d DCA 1974); Erlacher v. Erlacher, 289 So.2d 459 (Fla. 4th DCA 1974). An inability to comply, due not to fault or neglect but to circumstances arising after the entry of the order requiring payment, may excuse noncompliance. Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976). The records before us do not support the court's findings of ability to pay.[3] Rather, the rulings appear to have been based solely on absence of payment. Mere lack of payment is insufficient to overcome valid excuses.
We reject the suggestion that the court properly sentenced respondents who were unemployed at the time of the hearing for failure to pay in the past. The contempts were brought as civil contempts to obtain compliance with existing support *431 orders. For that reason, the respective orders contained purge amounts, enabling respondents to avoid punishment. A lack of ability to pay, however, turned them into criminal contempts.[4]See Andrews; Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977). If the contempts were in fact criminal, the likelihood of incarceration would have required appointment of counsel, Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and the protections of Florida Rule of Criminal Procedure 3.840.
We note that the contempt findings failed to specify the dates and amounts of individual overdue payments, the amounts of appellants' earnings, and their periods of employment. As a result, we are unable to verify the accuracy of the court's computations.

THE RECORDS
Finally, we feel compelled to comment upon the failure to follow appellate rules of procedure in preparing the records for appeal. Despite our repeated urging that the court and counsel follow Florida Rule of Appellate Procedure 9.200(b)(3), and contrary to our ruling that a stipulated record be furnished in instances when no transcript existed, the records do not conform to the rule. Rule 9.200(b)(3) provides:
If no report of the proceedings was made or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days of service. Thereafter, the statement and any objections or proposed amendments shall be submitted to the lower tribunal for settlement and approval. As settled and approved, the statement shall be included by the clerk of the lower tribunal in the record.
Instead of settling the record in the manner provided, the court simply placed a check mark on a prepared order form to signify that it uniformly approved appellees' statements of facts. This was done in all cases, including one for which the state filed no statement. The trial court also improperly "settled the record" in a case presided over by another judge. The rule does not permit appellees to submit statements of facts; only objections or proposed amendments may be served. In view of the fact that the statements of fact are not inconsistent and supplement each other, we have treated appellees' fact statements as amendments to appellants' statements. The combination arises from our endeavor to review coherent records on appeal.

CONCLUSION
Our decision to reverse is based not on any single error but upon the combined effect of individual rulings which might be appropriate under other circumstances. This court is concerned with seeing that innocent children are protected. While judicial process will achieve that result, due process must govern the conduct of contempt proceedings if convictions are to be upheld. Hearings must be conducted before an impartial tribunal with a record of the proceedings supporting the court's findings available for review. Rights to present a defense, to hear and present witnesses, to cross-examine, and to obtain private counsel must be afforded. Their absence compels reversal.
For these reasons, we reverse the orders entered by the trial court without prejudice to the redetermination of arrearage claims.
NOTES
[1] Although the computer printouts were not introduced into evidence or included in the records on appeal, they may have been admissible under section 90.803, Florida Statutes (1979), which states:

The provision of s. 90.802 to the contrary notwithstanding, the following are not inadmissible as evidence, even though the declarant is available as a witness:
... .
(8) Public records and reports.  Records, reports, statements reduced to writing, or data compilations, in any form, of public offices or agencies, setting forth the activities of the office or agency, or matters which there was a duty to report, excluding in criminal cases matters observed by a police officer or other law enforcement personnel, unless the sources of information or other circumstances show their lack of trustworthiness.
Unfortunately, the record does not disclose whether the trial court computed arrearage amounts from the printout alone or whether other information assisted the court in assessing the amounts. In any event, we question the propriety of a decision to impose imprisonment solely on the basis of a computer printout.
[2] Counsel informs us that 480 cases were scheduled for hearing. More than 100 fathers failed to appear but were brought to court under writs of bodily attachment. Approximately 120 respondents could not be served with process.
[3] For example, in Ware v. Ware, case number 81-2087, the entire statement of proceedings filed by the state and adopted by the court represents:

Pursuant to Florida Rules of Appellate Procedure Rule 9.200(b)(3), the statement of the proceedings is prepared based upon the recollection of the Attorney for the State:
On September 11, 1981, a contempt hearing was held before Judge James Rainwater, Acting Circuit Judge in and for Dade County. Under Florida Rules of Civil Procedure 1.611(a), a financial affidavit was prepared by the Respondent and submitted to the Court for consideration. Respondent stated he had not been working regularly and admitted not paying one cent for child support during his employment period. He stated he had to pay his bills first.
Judge Rainwater, after hearing the Respondent, considering his financial statement and the Depository printout, found the Respondent to be in willful contempt and sentenced him to one hundred twenty (120) days with a purge provision of $1,000.00.
Petitioner's statement represents:
Pursuant to Fla.R.App.Pro. 9.200(b)(3), the Appellant prepared this statement based on his recollection:
On September 11, 1981, I appeared before Judge Rainwater in Dade County Circuit Court. The hearing lasted only a few minutes. When my name was called, the judge asked me why I was behind in my payments. I told him I had been in jail and I had been out of work for seven months. He said that was no excuse, and that he was tired of hearing the same thing over and over again. At the end of the hearing I was put in handcuffs and taken to jail. At no time was anyone asked to swear to tell the truth. I was not advised of my right to counsel, nor was counsel appointed for me.
The financial statement relied upon by the court applied to respondent's financial status seventeen months prior to the hearing.
In the case of Castilla v. Jaimerena, case number 81-1772, the statement of proceedings filed by the state and adopted by the court discloses that,
The Respondent did not speak English and an interpreter was used. Respondent stated that he lived with his sister and had been unemployed, at least from February, 1981. He had worked as a dishwasher. Asked what his occupation was, his response was that he was an electrician, but could not find work in Miami since he did not speak English.
The Judge, having heard the testimony and having considered the financial statement, determined that the Respondent had the ability to pay child support and had willfully not done so. He further stated that he knew of Spanish contractors that were in need of an electrician and that he could not understand why he could not find work. Respondent was found in contempt and sentenced with the provision for purge of said contempt.
Respondent's financial affidavit, however, indicates that he has no income and lives with a sister who pays his expenses.
In Maddox v. Maddox, case number 81-2204, the trial court overlooked a prior order suspending child support payments. The order reflects the fact that the father was injured and that a redetermination of ability to work was to be made at a subsequent date. The record does not show that such a determination was made prior to the contempt finding.
[4] For a discussion of this issue in the context of failure to make support payments, see Barrett v. Barrett, 470 Pa. 253, 368 A.2d 616 (1977); see generally Fink, Basic Issues in Civil Contempt, 8 New Mexico L.Rev. 55, 70-77 (1977); Dobbs, Contempt of Court: a Survey, 56 Cornell L.Rev. 183, 265-67 (1971).