454 So.2d 565 (1984)
Frankie L. BOWEN, Appellant,
v.
Eugenia BOWEN and the Florida Department of Health and Rehabilitative Services, Appellees.
No. 83-446.
District Court of Appeal of Florida, Second District.
January 25, 1984.
*566 Robert T. Connolly of Fla. Rural Legal Services, Inc., Bartow, for appellant.
Geraldyne H. Carlton of Carlton & Carlton, P.A., Lakeland, for appellee Fla. Dept. of Health and Rehabilitative Services.
LEHAN, Judge.
We grant the petition for rehearing and vacate our affirmance of September 30, 1983. 446 So.2d 106.
This case involves whether a parent may be imprisoned for contempt of court on a finding that he wrongfully divested himself of the ability to make court-ordered child support payments and, if so, whether the parent is entitled to counsel at the contempt hearing. As explained below, we reverse the petitioning parent's conviction and sentence and hold that the parent under the facts of this case may be imprisoned for contempt but that since such a proceeding takes on criminal contempt characteristics, the parent is entitled to counsel and to the other protections of Florida Rule of Criminal Procedure 3.840.
The Florida Department of Health and Rehabilitative Services ("HRS") on May 3, 1982 filed an action for child support against Frankie L. Bowen, appellant, a father who was separated from his wife. No dissolution of marriage proceeding had been filed. The HRS action was to establish the amount of child support to be paid by Mr. Bowen to HRS, apparently to reimburse HRS for public assistance payments made to Mrs. Bowen.
HRS obtained a default against Mr. Bowen, and an order of support, signed by Circuit Judge Richard A. Bronson, was filed July 20, 1982. That order directed Mr. Bowen to pay $161.00 plus a $2.00 fee monthly to the HRS Domestic Relations Department.
After Mr. Bowen did not make the court-ordered payments, Circuit Judge Randall G. McDonald, on October 1, 1982, issued an order for Mr. Bowen to appear and show cause why he should not be held in contempt. When Mr. Bowen did not appear as directed, Judge McDonald issued an arrest warrant.
*567 Mr. Bowen was arrested and brought before Circuit Judge Clinton A. Curtis to show cause why he should not be held in contempt for failure to comply with the July 20, 1982 order. Judge Curtis on December 27, 1982 adjudged Mr. Bowen in contempt of court upon a finding that Mr. Bowen was financially able to make the support payments. Mr. Bowen was ordered to begin paying the Domestic Relations Department $50.00 per week. In the contempt order Judge Curtis excused Mr. Bowen from serving jail time.
After Mr. Bowen's failure to make payments continued, Judge McDonald, on January 20, 1983, issued an order for Mr. Bowen to appear and show cause on February 11, 1983 why he should not be held in contempt. This order admonished Mr. Bowen to bring "all proof you may have such as pay stubs, income tax returns, doctor's statements, receipts, etc. to show why you have not made these payments." The order notified Mr. Bowen that "if you are adjudged in contempt you may be imprisoned and/or assessed a fine and costs."
Mr. Bowen's affidavit filed in the trial court presented various purportedly exculpatory circumstances: Mr. Bowen was laid off from his $95.00 per week job as a painter in May 1982 due to a general cutback in the employer's work force. Although he diligently searched for work and had occasional income from yard work never exceeding $25.00 per week, he was otherwise unemployed to January 1, 1983. After that period of unemployment he received his first paycheck on January 21, 1983 and tendered to the Domestic Relations Department $50.00 that same day. However, the department would not accept that payment until after the then scheduled February 11, 1983 hearing.
The February 11, 1983 hearing was without a court reporter, but the parties and Judge McDonald agreed to the statement of evidence and proceedings concerning that hearing which is in the record. That statement reflects that at the five to ten minute hearing Mr. Bowen was told that he could present any evidence or witnesses on his behalf, that Mr. Bowen did ask questions to Mrs. Edie Smith of the Domestic Relations Department, and that Mr. Bowen appeared without counsel. Mrs. Smith testified that Domestic Relations Department employees are instructed to accept any payment whenever it is tendered. Mr. Bowen was unable to give the court the name or description of the person who allegedly refused to accept his payment. Judge McDonald advised Mr. Bowen that he was then $916.00 in arrears and asked how much Mr. Bowen could pay at that point. Although Mr. Bowen responded that he could pay $200, he did not demonstrate that he had that sum in his possession.
On February 11, 1983, Judge McDonald adjudged Mr. Bowen to be in contempt for the failure to make support payments, finding that Mr. Bowen had had the ability to comply with the December 27, 1982 order but had divested himself of the ability to do so through his own fault or neglect to frustrate that order. The contempt order sentenced Mr. Bowen to five months and twenty-nine days in jail but provided that Mr. Bowen could purge himself by paying the $916.00.
Apparently the trial court felt that petitioner's job provided him the resources to pay but that he had used those resources for other purposes. Evidently the trial court disbelieved petitioner's testimony that he had tendered $50.00 to the Domestic Relations Department and that he could pay $200.00 on February 11, 1983. Despite the prior proceedings, petitioner still did not come up with the money on that date. However much the record may lack total clarity concerning petitioner's inability to pay, this case comes to us on a finding that petitioner was unable to pay and that his inability was his own fault. There is some support in the record for that finding, but, in any event, petitioner did not carry his burden of proof to establish otherwise, as explained further below.
The record is unclear as to whether Mr. Bowen was then arrested and delivered to the sheriff for incarceration. But Judge McDonald stayed the incarceration pending *568 this appeal and granted Mr. Bowen's motion for determination of indigency for purposes of this appeal.
The issues of whether a parent, who is accused of contempt for failing to make child support payments, is entitled to counsel and is subject to incarceration potentially involve (1) three potential types of parental circumstances; (2) two potential types of contempt; and (3) at least two potential types of the underlying legal proceedings. As to (1), the parent may be either able to pay, unable to pay through no fault of his own, or unable to pay because, although he was initially (at the time of the support order) able to pay, he was divested of the ability to pay through his own fault or neglect in frustration of the purpose of the support order. As to (2), the contempt proceeding may be characterized as civil or criminal. As to (3), the support order may have been entered in a dissolution of marriage proceeding or in a support proceeding brought by HRS under section 409.2561, Florida Statutes (1981).
Two supreme court cases are especially recognized as expressing the law which governs contempt proceedings involving the foregoing types of parental circumstances, contempt, and legal proceedings, Faircloth v. Faircloth, 339 So.2d 650 (Fla. 1976), and Andrews v. Walton, 428 So.2d 663 (Fla. 1983). Both concern the civil contempt requirement that the penalty of incarceration not be imposed unless there is proof of the defaulting parent's ability to make the court-ordered support payments. Faircloth required affirmative trial court findings of that ability. Andrews affirmed a trial court's findings of that ability. Neither case directly addresses the circumstances of the case now before us.
This case involves a parent who was sentenced to prison upon an express finding that the parent was unable to pay child support because the parent, through his own fault or neglect, was divested of that ability. Although under the language of Faircloth such a finding supports an adjudication of contempt, it would not justify incarceration of the parent for civil contempt. See Ponder v. Ponder, 438 So.2d 541 (Fla. 1st DCA 1983), where Judge Zehmer interpreted the effect of Andrews on Faircloth and found that "in every case, present ability to pay... is a necessary predicate to committing a civil contemnor to jail... ."
This court, in our now vacated September 30, 1983 order affirming petitioner's conviction and sentence, cited Faircloth. Faircloth may be construed from its holding and dicta as standing for at least three propositions. First, that case put the burden of proving inability to pay on the parent and defined that burden:
The burden is upon the party in default to prove not only that he is unable to comply with the court's present order to pay but also that his present inability is due not to his fault or neglect but rather to circumstances beyond his control which intervened since the final decree ordering him to pay.
339 So.2d at 652. Second, the trial court, to justify an adjudication of contempt, must make an express finding that either
(1) the petitioner presently has the ability to comply with the order and willfully refuses to do so, or (2) that the petitioner previously had the ability to comply, but divested himself of that ability through his fault or neglect designed to frustrate the intent or purpose of the order.
339 So.2d at 651. Third, the parent has no right to counsel in the contempt proceeding, even though incarceration is the penalty imposed, when a portion of the first of the foregoing two types of express findings referred to in Faircloth is made, i.e., when the parent has the ability to pay. 339 So.2d at 652.
The trial court in the case now before us made express findings that petitioner had the ability to comply with the support order but had divested himself of that ability to do so through his own fault or neglect. Also, we believe that petitioner failed to carry the burden of proof which is required by the above quotation from Faircloth. Thus, the trial court's actions were consistent *569 with the first two of the foregoing three propositions from Faircloth.
However, petitioner asserts that the trial court erroneously failed to afford petitioner his constitutional right to counsel. We have here the converse of the foregoing third proposition in Faircloth. The issue here is whether the parent has a right to counsel, when incarceration is the penalty imposed, upon a finding that the parent has inability to pay.
Andrews v. Walton, supra, confirmed and expanded upon Faircloth and did refer directly to circumstances in which the parent does not have the ability to pay. Andrews may have appeared, on the surface, to dispose of the issue before us by saying that
[T]here are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.
428 So.2d at 666. However, Andrews did not address the particular type of parental circumstances now before us, to wit, that the parent, by his own fault or neglect, divested himself of the ability to pay (the second type of express finding referred to in Faircloth as justifying a contempt adjudication).
We do not believe the foregoing language of Andrews saying that there is no right to counsel encompasses the present fact situation. Andrews does find that, "there are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support...." (emphasis added), 428 So.2d at 666. But Andrews also cites the United States Supreme Court for the proposition that
an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.
428 So.2d at 665, quoting from Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). That Lassiter quotation describes precisely the situation before us.
Petitioner's jail sentence for civil contempt was improper because he did not have the present ability to pay. Petitioner here faces incarceration without carrying "the key to his cell in his own pocket" by having the ability to purge the contempt by paying. Andrews, 428 So.2d at 665. A contemnor's ability to purge himself is, of course, the well understood justification for imprisonment in civil contempt proceedings where the defendant does not have the due process protections, such as right to counsel, afforded in criminal contempt proceedings. See also Pugliese v. Pugliese, 347 So.2d 422 (Fla. 1977).
In view of petitioner's present inability to pay, the court's sentence was equivalent to punishment for criminal contempt. At that point the proceeding no longer had as its purpose "to coerce action or non-action by a party." Andrews, 428 So.2d at 665 (stating the characteristics of civil contempt proceeding). The punishment was being imposed
solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court.
Andrews, 428 So.2d at 665 (stating the characteristics of criminal contempt proceedings). The contempt proceeding then took on criminal characteristics in that the sanctions became punitive. See Ponder v. Ponder, supra, where "[t]he sentencing... to jail ... turned the civil contempt proceedings into a criminal contempt proceeding... ." See also Robbins v. Robbins, 429 So.2d 424, 431 (Fla. 3d DCA 1983), involving civil contempt proceedings where a "lack of ability to pay turned them into criminal contempts." In fact, the wording of the February 11, 1983 contempt order states that the prison sentence was "as punishment."
Both Ponder and Robbins, in effect, equate lack of an adequate showing of ability to pay with inability to pay when the penalty is incarceration. Both cases found that a prison sentence imposed upon a parent *570 for present (at the time of the contempt proceeding) inability to make court-ordered support payments caused the proceeding to become a criminal contempt proceeding at which the parent was entitled to counsel. Neither case involved a finding, as here, by the trial court that the parent had divested himself of the ability to pay through his own fault or neglect. Subsequent proceedings where the accused parents were entitled to representation by counsel may have occurred in the trial courts following the district courts of appeal opinions in Ponder and Robbins. In each of such proceedings only a finding that the parent had divested himself of the ability to pay through his own fault or neglect would have supported continued imposition of prison sentences, assuming that the parent's inability to pay continued to the time of those subsequent proceedings. That is, nonculpable inability to pay would not justify incarceration.
We do not suggest that the court could not punish petitioner for failing to comply with previous orders for payment at a time when he had the ability to pay. An indigent parent should be subject to jail if he has disdained the authority of the court by divesting himself of his ability to comply with a child support order. However, this can only be accomplished by first providing petitioner with the right to appointed counsel. Andrews, itself, recognizes that defendants in criminal contempt proceedings are entitled to counsel. 428 So.2d at 665. See also Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).
Our views are reflected in Judge Pearson's opinion in Chapman v. Lamm, 388 So.2d 1048, 105 (Fla. 3d DCA 1980), rev'd on other grounds, Lamm v. Chapman, 413 So.2d 749 (Fla. 1982):
We would not in any way indicate that ... [the father] is not to be susceptible to punishment for his failure, as a father, to help to support his children. The propogation of children for others to support is an evil that is all too prevalent in our social system and one that threatens its stability. Nevertheless, a defaulting father must be accorded due process of law if he is to be imprisoned.
See also Judge Baskin's opinion in Robbins v. Robbins, 429 So.2d at 431, saying that "if the contempts were in fact criminal, the likelihood of incarceration would have required appointment of counsel." Of course, a proceeding for indirect criminal contempt should also follow the requirements of rule 3.840, Florida Rules of Criminal Procedure.
In the final analysis, it appears that either the entire proceeding was civil in nature and the petitioner should not have been sentenced to prison, or the proceeding became criminal in nature and petitioner could properly have been imprisoned but was entitled to counsel at the contempt hearing.
Our holding applies regardless of whether a parent's disobedience is to a child support order entered in a dissolution of marriage proceeding, as in Faircloth, or in a support proceeding brought by HRS not incident to a dissolution proceeding, as here and in Andrews. Also irrelevant to our disposition of this case is the unusual facet that petitioner was initially held in contempt on a finding of ability to pay. That contempt order did not impose incarceration. His right to counsel derives from the subsequent contempt order which was based upon petitioner having wrongfully divested himself of the ability to pay and which imposed incarceration.
A conclusion from the facts of this case that petitioner otherwise received fair treatment from the trial judges and nonetheless persisted in his failure to recognize his obligations is supported by the record. Of course, it is entirely possible that a lawyer for petitioner might have enabled petitioner to present his case somewhat more favorably. In any event, the constitutional rights in criminal proceedings of not only petitioner but of similarly situated parents facing contempt punishments are paramount. It may well be, and hopefully will be, that counsel for such parents, cognizant of potential penalties under the law, will render advice which will in many cases *571 convince parents to meet their obligations, thereby avoiding these types of proceedings.
We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED FOR A NEW TRIAL.
GRIMES, A.C.J., and SCHOONOVER, J., concur.