Horace LUCKEY, III, M.V. Booker, William F. Braziel, Jr., G. Terry Jackson, Joseph Saia, Charles Thornton, on their behalf and on behalf of all persons similarly situated, Beverly Cannon, Plaintiffs–Appellants,

v.

Zell MILLER, Governor, Joe C. Crumbley, Hon., Chief Judge of Clayton Judicial Circuit, Robert J. Noland, Hon., Chief Judge of Douglas Judicial Circuit, Defendants–Appellees.

No. 92–8038.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1992.

Neil Bradley and Laughlin McDonald, American Civil Liberties Union Foundation, Inc., Robert B. Remar, Megan E. Gideon, Remar & Graettinger, PC, David A. Webster, Sumner & Hewes, Eric G. Kocher, Atlanta, Ga., for plaintiffs-appellants.

Alfred L. Evans, Jr., Sr. Asst. Atty. Gen., Dennis R. Dunn, Asst. Atty. Gen., Atlanta, Ga., for plaintiffs-appellants.

Before KRAVITCH and COX, Circuit Judges, and DYER, Senior Circuit Judge.

PER CURIAM:

Affirmed on the basis of the order of the United States District Court dated December 16, 1991, attached hereto as an Appendix.

AFFIRMED.

## APPENDIX

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF GEORGIA

### ROME DIVISION

CIVIL ACTION 4:–86–cv–297–HLM

Horace Luckey, III, et al., Plaintiffs,

**v.**

Joe Frank Harris, Governor,
et. al., Defendants.

### ORDER

This case is on remand from the Eleventh Circuit, and is presently before the Court on Plaintiff's Motion for a Preliminary Injunction and on Defendant's renewed Motion to Dismiss. As this Court finds the Defendant's Motion to Dismiss should be granted, the Court does not reach the issues presented in Plaintiff's Motion for a Preliminary Injunction.

### A. *Procedural History*

This case has, thus far, been the subject of four decisions by the Eleventh Circuit Court of Appeals. The first decision, *Luckey v. Harris,* 860 F.2d 1012 (11th Cir.

1988), ("Luckey I") reversed this Court's grant of the Defendant's initial motion to dismiss. The Appellate Court held that Plaintiffs' Complaint did state a claim upon which relief could be granted and that it was not barred by the Eleventh Amendment. The Appellate Court did not address Defendant's abstention arguments.

Abstention was addressed, albeit in a dissenting opinion, in the second Appellate Court opinion in this case. *See, Luckey v. Harris,* 896 F.2d 479 (11th Cir.1989) ("Luckey II"). In *Luckey II* the Appellate Court denied a motion to rehear the case, and also denied a motion to hear the case *en banc.* The majority of the court did not issue an opinion. Four judges, however, dissented from the majorities' decision in an opinion written by Judge Edmondson. Judge Edmondson's opinion, joined by Judges Fay and Cox and Chief Judge Tjoflat, concluded that dismissal of this case was required under *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), and *O'Shea v. Littleton,* 414 U.S. 488 [94 S.Ct. 669, 38 L.Ed.2d 674] (1974), lest Georgia's state courts be placed, potentially, under the direct supervision of this Court.

On remand from the Circuit's second opinion in this case, this Court concluded that Defendant's renewed motion to dismiss must denied under the law of the case doctrine. This Court reasoned that:

"by soundly reversing this Court, denying rehearing, denying rehearing en banc in the face of Judge Edmondson's dissent, and denying Defendant's Motion to Stay the Mandate pending the Supreme Court's disposition of Defendant's petition for a writ of certiorari, the Eleventh Circuit gave this Court the clear message that this case should be heard."

Order of the Court dated July 10, 1990, at 11. This Court also made clear, however, that had it not considered itself bound by the law of the case, it would have abstained from the hearing the case. *Id.* Lastly this Court certified its disposition of the case for immediate appeal under 28 U.S.C. § 1292(b).

The Appellate Court's third opinion in this case upheld this Court's grant of appellate certification. *See, Harris v. Luckey,* 918 F.2d 888 (11th Cir.1990) ("Luckey III"). The Court pointed out that an immediate appeal was appropriate in light of the fact that "there are substantial grounds for [the defendant's] contention that the district court was not bound by the law of the case to reject the abstention doctrine of *Younger.*" *Id.,* 918 F.2d, at 893.

An immediate appeal was had and the Appellate Court reversed this Court for the second time. *See, Luckey v. Miller,* 929 F.2d 618 (1991) ("Luckey IV"). In its fourth opinion in the instant case, the Appellate Court held that the law of the case doctrine did not preclude consideration of the abstention doctrine since it was unclear whether such arguments had been previously considered. The Appellate Court found first that the arguments in favor of abstention were not raised by the Defendants prior to the Circuit's opinion in *Luckey I,* and were not addressed by the Appellate Court for that reason. Second, the Court found that since the Appellate Court's second opinion, *Luckey II,* denied *en banc* review without specifying any reasons for that denial, whether the Court had considered the abstention arguments raised by Judge Edmondson in his dissent could not be determined. The Appellate Court in *Luckey IV* concluded, therefore, that the law of the case doctrine did not bar consideration of the abstention doctrine and the case was remanded in order that such arguments could be considered.[1]

1. An analysis of the Circuit's handling of this case might indicate that the Circuit has determined that this Court should simply enter an order dismissing this case under the abstention doctrine. Four judges have clearly stated that this would be their conclusion. Moreover, in its last order this Court clearly indicated its intention to dismiss this action on abstention grounds had it not considered itself bound by the law of the case. The Circuit has now removed the obstacle of the law of the case without comment as to this Court's alternative holding. An argument exists, therefore, that the Circuit approves of this Court's alternate holding since the Circuit did nothing to dissuade this Court from its clearly expressed course.

## B. *Plaintiff's Complaint*

Plaintiffs' Complaint asserts a class action on behalf of "all individuals who are or will in the future be adversely affected by the unconstitutional practices of the indigent defense system within Georgia." They claim that Georgia's indigent defense system "is inherently incapable of providing constitutionally adequate services," and that the system therefore "violates the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution." Plaintiff's seek the following relief:

(1) a court order providing for an indigent defense system that;

(a) furnishes counsel, if requested, at probable cause determinations,

(b) furnishes speedy appointment of counsel for critical stages,

(c) furnishes adequate services and experts, and

(d) furnishes adequate compensation for counsel

(2) a court order that "uniform standards be promulgated and adopted governing the representation of indigent consistent with the judgment in this case;"

(3) monitor the implementation of those standards; and

(4) award attorney's fees and other proper relief.

Plaintiff's complaint has been upheld in the face of challenges based on Fed. R.Civ.P. 12(b)(6), and the Eleventh Amendment. As pointed out above, this complaint now faces a challenge based on the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971).

## C. *Abstention*

In *Younger v. Harris*, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971), the United States Supreme Court found that a "basic doctrine of equity jurisprudence [is] that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.*, at 43–44 [97 S.Ct. at 750]; *See,* 28 U.S.C. § 2283. The Court explained that abstention from interference in state criminal proceedings served the vital consideration of comity between the state and national governments.

"The concept does not mean blind deference to 'State's Rights' any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the states."

*Id.*, at 44 [91 S.Ct. at 750–51].

The doctrine was further elaborated upon in *O'Shea v. Littleton*, 414 U.S. 488 [94 S.Ct. 669, 38 L.Ed.2d 674] (1974). In *O'Shea* the plaintiffs sought an injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal trials. The Court held that;

"a federal court should not intervene to establish the basis for future intervention that would be so intrusive and unworkable.... The objection is to unwarranted anticipatory interference in the state criminal process by means of continuous or piecemeal interruptions of the state proceedings by litigation in the federal courts; the object is to sustain '[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law."

*Id.*, at 500 [94 S.Ct. at 678], *quoting, Stefanelli v. Minard*, 342 U.S. 117, 120 [72 S.Ct. 118, 120, 96 L.Ed. 138] (1951).

In *Luckey II*, Judge Edmondson found that the Supreme Court's decision in *O'Shea* mandated a dismissal of the instant complaint pursuant to Fed.R.Civ.P. 12(b).

His dissent, joined by three other judges, also found that under binding Eleventh Circuit authority, the Plaintiff's complaint should be dismissed on abstention grounds. *See, Luckey II,* 896 F.2d, at 481–82; *See also, Gardner v. Luckey,* 500 F.2d 712 (5th Cir.1974); *Tarter v. Hury,* 646 F.2d 1010 (5th Cir. Unit A 1981). Likewise in its order dated July 10, 1990, this Court made it clear that had it not considered itself bound by the law of the case doctrine this Court would have dismissed the present action under *O'Shea* and other Eleventh Circuit authority. *See,* order dated July 10, 1990, at 11.

■ The Appellate Court's opinion in *Luckey IV* impacted this Court's analysis of the pending motion to dismiss in two ways. First, the opinion clearly indicated that the Circuit's previous opinions had not passed on the merits of the Defendant's abstention defense.[2] *Luckey IV,* 929 F.2d, at 622. Second, the opinion in *Luckey IV* made it clear that the law of the case doctrine was no bar to dismissal under the abstention doctrine. *See, Luckey IV,* 929 F.2d, at 623. Consequently, given that this Court has already expressed its view of the pending motion, and that the obstacles this Court considered to prevent an implementation of that view have been removed, the Plaintiffs' burden in opposing the pending motion is, basically, to convince this Court that it should change its view. The Plaintiffs have failed to do so.

Plaintiffs' first argument against dismissal of this action is that *Younger* is no bar to all federal injunctive relief even if the same subject is actually, rather than potentially, in state court litigation. Plaintiffs' contend that they do not seek to contest any criminal conviction, nor to restrain any criminal prosecution, and that they seek only to have this Court consider systemic issues which cannot be raised in any individual case. Plaintiffs argue that *Younger* only bars federal courts from restraining ongoing state court prosecutions and does not bar the prospective relief they seek.

Plaintiffs' legal authority for this position is tenuous. The two district court opinions upon which rely, *Westin v. McDaniel,* 760 F.Supp. 1563 (M.D.Ga.1991) and *R.C. v. Hornsby,* no. 88–d–1170–n, M.D.Ala. April 19, 1989, are distinguishable on their facts. In *Westin,* for example, the Court ruled on alternative grounds that: (1) there was no state court action pending, and (2) even if there was, the claim would fall within the bad faith exception to the *Younger* abstention doctrine. *See Westin,* 760 F.Supp., at 1568, 1572. *R.C. v. Hornsby,* supra, is also distinguishable. In *R.C.,* a case in which the plaintiff sought to alleviate systemic constitutional deprivations in the foster care system for emotionally disturbed children, the Court expressly found that there was no state court proceedings which would be interfered with, and that the state's juvenile courts lacked authority to consider the issues raised by the complaint. In the instant case, however, a decree of the sort requested by the plaintiffs would, inevitably, interfere with every state criminal proceeding.[3] Moreover, in the instant case, the state courts do have the authority to consider the claims raised by the plaintiffs. *See, Luckey II,* (Edmondson dissenting), 896 F.2d, at 482.

Moreover this Court cannot concur in the Plaintiff's characterization of their claims. Although it is true that Plaintiffs do not seek to contest any single criminal conviction nor restrain any individual prosecution, it is nonetheless clear that plaintiff's intend to restrain every indigent prosecution and contest every indigent conviction until the systemic improvements they seek are in place. The fact no individual case is contested functions only to set up an empty

---

2. Consequently, by this Court's count, there are four Circuit Court Judges who have accepted the Defendant's argument, and none who explicitly reject it.

3. Plaintiffs admit, by implication, that every criminal prosecution of an indigent person in Georgia would be restrained, potentially, by a finding of liability in this case. Plaintiff's argue that no such order is necessarily required, "unless Defendants defaulted in meeting Constitutional requirements...." *Plaintiff's Supplemental Brief Opposing Dismissal,* page 17.

syllogism by which plaintiffs may argue that their intent is not to interfere with pending prosecutions.

In any case, the thrust of Judge Edmondson's opinion, as well as this Court's previous decision, was on the analysis provided by the Supreme Court in *O'Shea v. Littleton,* 414 U.S. 488 [94 S.Ct. 669, 38 L.Ed.2d 674] (1974). This Court was specifically concerned with the prospective effect of the decree sought by the plaintiffs. As this Court pointed out:

> "[t]he relief sought by the plaintiffs would require this Court to force the state to promulgate uniform standards relating to various stages of prosecutions and also to monitor those standards. If the monitoring is to be effective, this Court will have to review ongoing state proceedings and may have to interrupt them if the standards are not being followed. Even if the Court merely required periodic reporting, such action on the part of a federal court strikes at the heart of the prohibitions that are embedded into constitutional law by Younger and its progeny. *See, O'Shea,* 414 U.S., at 501 [94 S.Ct. at 679] (periodic reporting "would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity")."

*See,* Order dated July 10, 1990, at 10.

Plaintiffs do not shrink from the task of attempting to distinguish their claims from those before the Court in *O'Shea.* Plaintiffs point out that in *O'Shea* any court order implementing the relief requested would have necessarily involved constant

outside supervision. Plaintiffs contend that in the instant case they seek merely an order which would require the Defendants to reform their own system, and not to impose ongoing review from the outside.

Plaintiffs bolster this argument by presenting a number of possible solutions to the problem of creating a remedy, inoffensive to the comity concerns of *Younger* and *O'Shea,* should liability be found. First, a reporting requirement, if required would not be unduly burdensome in light of the fact that Georgia has already instituted a system of reporting as a precondition to state grants.[4] Second, any relief against the Defendant Governor would not impact the concerns expressed in *Younger* and *O'Shea* since the onus would be on the state executive rather than the judiciary to comply. Third, any other relief would not require intervention in ongoing prosecutions.[5] Equitable relief such as a declaratory judgment could be imposed and the state Defendants left to their own resources in formulating a means for compliance. Likewise, a simple "best efforts" decree would leave the Defendants similar autonomy in fashioning their means of compliance.[6]

Plaintiffs conclude that since this Court would have a host of remedies which would not offend *O'Shea* by establishing the basis for future intervention in Georgia's criminal justice system, the bar of *O'Shea* does not apply. *See, Gerstein v. Pugh,* 420 U.S. 103 [95 S.Ct. 854, 43 L.Ed.2d 54] (1975); *Tucker v. City of Montgomery Board of Commissioners,* 410 F.Supp. 494 (M.D.Ala. 1976).

---

**4.** Plaintiffs contend that since such reports, at least in some form, are being made, any Court order would not need to require them to be made. Moreover, since the reports are made by state court administrators, any reporting order would not need to be directed at the judicial officer. In the view of this Court, however, the degree of burden imposed by such a requirement is only one factor underlying the concept of comity. The real question is whether the Court should force such reports to be made, not how difficult it would be to make them.

**5.** Plaintiffs contend that all relief other than a reporting requirement would not be offensive to the comity concerns of *Younger* and its progeny.

**6.** Plaintiffs contend, basically, that leaving the means of compliance to the state's initiative would avoid any comity problems with entering a finding of liability. Plaintiffs point out that any stronger action would not be necessary unless the Defendants failed to take appropriate action. As explained infra, however, this Court does not believe that it can extricate itself from the problems of enforcing a decree of the nature sought so easily.

This Court is unable to agree with the Plaintiffs' argument because, in the view of this Court, even the limited decrees set forth above would inevitably set up the precise basis for future intervention condemned in *O'Shea*. Such a case cannot be decided in a vacuum, and the potential enforcement difficulties of any order reforming such an integral aspect of a state criminal justice process as the indigent defense system would be significant.

Plaintiffs contend that the Court should not anticipate, at this stage of the litigation, that it would be forced to enter relief which would offend the principles set forth in *O'Shea*. They point out that the Defendants, in effect, ask this Court to assume in advance that they will flout any order which the Court may issue. Plaintiffs argue that such hypothesized recalcitrance cannot defeat Plaintiff's claim for relief. In the view of this Court, however, hypothesized recalcitrance is the precise inquiry demanded by *O'Shea*. As the Court in *O'Shea* explained,

> "the question arises of how compliance might be enforced if the beneficiaries of the injunction were to charge that it had been disobeyed. Presumably any member of respondent's class who appeared as an accused before petitioners could allege and have adjudicated a claim that petitioner's were in contempt of the federal court's injunction order, with a review of an adverse decision in the Court of Appeals and, perhaps in this court."

*O'Shea*, 414 U.S., at 501–02 [94 S.Ct. at 679]. Likewise in his dissent Judge Edmondson noted,

> "If a state court judge does not obey a district court's injunction, are we willing to jail the state court judge for contempt? Avoidance of this unseemly conflict between state and federal judges is one reason for *O'Shea* and *Younger*.

*Luckey II*, 896 F.2d, at 482. This Court is constrained, therefore, to focus on the likely result of an attempt to enforce an order of the nature sought here. It would certainly create an awkward moment if, at the end of protracted litigation, a compliance problem arose which would force abstention on the same ground that existed prior to trial.

Plaintiffs argue, finally, that even if the entry of a declaratory judgment or best efforts decree should lay the groundwork for a future request for more detailed relief, that abstract possibility is insufficient to require this Court to deny all relief. Again, this Court must disagree. In the view of this Court, laying the groundwork for a future request for more detailed relief which would violate the comity principles expressed in *Younger* and *O'Shea* is the precise exercise forbidden under the abstention doctrine. *O'Shea*, 414 U.S., at 500 [94 S.Ct. at 678].

Although the Court admires the efforts put forth by the Plaintiffs in an attempt to distinguish their claims from those in *O'Shea*, this Court cannot concur in their conclusions. Consequently the view of the law expressed by this Court in its order dated July 10, 1990, remains this Court's view of the law today. This Court does not believe that it should exercise its equitable jurisdiction to hear this case.

Accordingly, based on the above, Defendant's Motion to Dismiss is GRANTED.

IT IS SO ORDERED, this the 16th day of December 1991.

/s/ Harold L. Murphy
UNITED STATES DISTRICT JUDGE