United States Court of Appeals,

Eleventh Circuit.

No. 95-4214.

Charles POMPEY;  Richard Atlas;  James Edwards;  James Peters;
Larry Lashbrook, personally and as friend of John Lashbrook and
David Lashbrook, minors, individually and on behalf of all others
similarly situated, Plaintiffs-Appellants,

v.

BROWARD COUNTY and Jack Osterholt, in his capacity as
Administrator of Broward County;  Broward County Support
Enforcement Division, a division of Defendant Broward County;  Judy
Fink, individually and in her official capacity as Director of
Support Enforcement Division;  Dale Ross, Chief Judge, Broward
County Circuit Court;  Estella Moriarty, C. Lavon Ward, Robert L.
Andrews;  Broward County Circuit Judges;  and Jane and/or John
Does, certain unnamed judges of the Family Division of the Broward
County Circuit Court, in their official capacities, Defendants-
Appellees.

Sept. 26, 1996.

Appeal from the United States District Court for the Southern
District of Florida. (No. 94-6019-C-WJZ), William J. Zloch, Judge.

Before CARNES and BARKETT, Circuit Judges, and DYER, Senior Circuit
Judge.

CARNES, Circuit Judge:

This case stems from Broward County, Florida's "Daddy
Roundups," which are part of an effort in that county to force
non-custodial parents to pay their past due child support
obligations.  The plaintiffs are five fathers who already have
been, and who allege that they are also likely in the future to be,
ordered incarcerated by the Broward County Circuit Court for
failure to pay child support.  They brought this 42 U.S.C. § 1983
suit against:  (1) the Broward County Support Enforcement Division
(the "Support Division"), Broward County, and its administrator,
Jack Osterholt in his official capacity (collectively, the "County

defendants"); (2) the director of the Support Division, Judy Fink in her official and individual capacity; and (3) the family division judges of the Broward County Circuit Court (the "defendant judges").

The plaintiffs claim that the defendants' practices during the "Daddy Roundups" are unconstitutional because indigent fathers are not advised of their right to court-appointed counsel, are not provided with court-appointed counsel, and are not given a meaningful opportunity to be heard during the "cursory" contempt hearings. The plaintiffs seek various forms of equitable relief and damages.

The defendant judges and the County defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) or (c), and the district court granted that motion. It also granted summary judgment in favor of Ms. Fink, the director of the Support Division, on grounds of absolute, or alternatively, qualified immunity. The plaintiffs appeal those judgments.

## I. BACKGROUND

Because we decide this case as to all defendants based upon the complaint, we take the facts alleged in the complaint to be true and construe them in the light most favorable to the plaintiff. *E.g., ICA Constr. Corp. v. Reich,* 60 F.3d 1495, 1497 (11th Cir.1995). According to the plaintiffs' allegations, the defendants regularly conduct "Daddy Roundups," in which parents who are allegedly in arrears on their child support payments are brought into court for civil contempt hearings. A large number of contempt cases are processed each day, with the frequent result

being that less than five minutes is spent on any given case. Sometimes faulty or insufficient evidence is presented by Broward County with regard to the amount in arrears. The court does not inform the appearing parents of a right to court-appointed counsel, and Broward County "actively dissuades" indigent parents from requesting court-appointed counsel. Although it is required by Florida law to do so, the court does not usually make a determination regarding whether the parent who is being held in contempt is indigent. As a result, indigent parents are imprisoned even though they are unable to make their child support payments. No records of the contempt hearings are made. Parents who are held in contempt for failure to make child support payments may terminate their jail sentences either by paying the amount in arrears or by remaining in jail for 179 days.

The plaintiffs—Charles Pompey, Richard Atlas, James Edwards, James Peters, and Larry Lashbrook—were all held in contempt for failure to pay child support. At least one of the five plaintiffs, Mr. Edwards, and possibly another, Mr. Pompey, failed to appear at their contempt hearings, and their cases were adjudicated by default. All of the plaintiffs allege that they were not informed prior to being held in contempt that they were facing long periods of incarceration, or of any right to court-appointed counsel. They also allege that the court failed to make an affirmative finding of their ability to pay the amount in arrears.[1]

---

[1]Plaintiff Charles Pompey was held in contempt in May 1993, and the court set a purge amount of $22,100.00. Plaintiff James Edwards was held in contempt in May 1993, and the court set a purge amount of $1,352.00. Plaintiff James Peters was held in contempt in November 1990, and the court set a purge amount of

None of the plaintiffs alleged at their contempt hearings that they were indigent at the time of their hearings. Even so, one of the plaintiffs, Mr. Pompey, successfully filed a petition for a writ of habeas corpus with the Florida District Court of Appeals. Pursuant to Mr. Pompey's petition, the Florida District Court of Appeals instructed the circuit court to hold an evidentiary hearing to determine Mr. Pompey's ability to pay his purge amount. As a result of that hearing, the trial court reduced the purge amount from $22,100.00 to $212.00.

None of the other plaintiffs filed either direct appeals or habeas petitions in the Florida courts concerning their incarceration for contempt. Instead, the plaintiffs filed this 42 U.S.C. § 1983 action, in which they contend that their contempt hearings violated the Sixth and Fourteenth Amendments to the United States Constitution because: (1) the court failed to inform them of their right to court-appointed counsel, and to appoint such counsel for indigent fathers, and (2) the court failed to provide them with due process at their civil contempt hearings by relying on faulty and insufficient evidence with regard to the amount in arrears, spending insufficient amounts of time on each case, and failing to keep records of each hearing.

The plaintiffs sought: (1) injunctive relief and compensatory damages against the Support Division; (2) declaratory and injunctive relief against the defendant judges; (3)

---

$5,598.11. Plaintiff Richard Atlas was held in contempt in August 1992, and the court set a purge amount of $5,260.00. Plaintiff Larry Lashbrook was held in contempt in August 1989, and the court set a purge amount of $1,715.00.

compensatory damages against Broward County;  and (4) compensatory and punitive damages against Judy Fink in her individual capacity.[2]

The County defendants moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss the action for failure to state a claim, or alternatively, for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).  That motion included a contention that Ms. Fink was entitled to either absolute or qualified immunity.  The district court granted the County defendants' motion, on grounds that they were not proper defendants because they neither had the duty nor the authority to appoint counsel to indigent parents, or to conduct the contempt hearings.  The district court alternatively held that the claims against the County defendants should be dismissed based upon the *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), abstention doctrine.  [Op. at 3737] The court also held that Ms. Fink was entitled to absolute immunity, or alternatively, qualified immunity.

The defendant judges moved to dismiss the claims against them

---

[2]Because the Support Division is a division of Broward County, we treat the claim against it as a claim against the County.  *See* Fla.Stat.Ann. § 125.15 (West 1988 & Supp.1996); *Dean v. Barber,* 951 F.2d 1210 (11th Cir.1992).

In addition, to the extent that the plaintiffs brought a § 1983 claim against Jack Osterholt, in his official capacity as administrator of Broward County, and against Judy Fink, in her official capacity as director of the Support Division, we treat those claims as claims against the County.  *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.")

on *Rooker-Feldman* grounds.[3]  Although the district court rejected the *Rooker-Feldman* contention, it granted the motion to dismiss on grounds that it should abstain from hearing the claims against the defendant judges based upon the *Younger* abstention doctrine.

The plaintiffs timely filed this appeal, challenging all of the court's judgments.

## II. DISCUSSION

The plaintiffs contend that:  (1) the *Younger* abstention doctrine does not apply to their claims against the defendant judges;  (2) the County defendants were proper defendants and therefore the claims against them should not have been dismissed; and (3) Ms. Fink was not entitled either to absolute or qualified immunity.  We will address the claims in that order.

A. Claims Against the Defendant Judges

The plaintiffs sought injunctive and declaratory relief against the defendant judges.  They asked the district court to enjoin the defendant judges from:  (1) incarcerating individuals at contempt hearings without informing them of their right to counsel generally, and to appointed counsel if they are indigent;  and (2) incarcerating individuals at contempt hearings without appointing counsel to represent them if they are indigent.  In addition, the plaintiffs sought a declaratory judgment that the defendant judges' practices of incarcerating individuals at a contempt hearing without informing them of their right to counsel, without providing

---

[3]*See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482-84, 103 S.Ct. 1303, 1315-17, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923).

them with court-appointed counsel, and without making an affirmative finding of fact regarding an individual's ability to pay are unconstitutional.

The district court dismissed the claims for equitable relief against the defendant judges on *Younger* abstention grounds. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court "reaffirmed the "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.' " *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677-678, 38 L.Ed.2d 674 (1974) (quoting *Younger,* 401 U.S. at 43-44, 91 S.Ct. at 750). The *Younger* abstention doctrine derives from "the vital consideration of comity between the state and national governments," *Luckey v. Miller,* 976 F.2d 673, 676 (11th Cir.1992) ("*Luckey V* "),[4] which

---

[4]The underlying controversy in the *Luckey* case spawned five sets of opinions: *Luckey v. Harris,* 860 F.2d 1012 (11th Cir.1988) ("*Luckey I* "), *cert. denied,* 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990); *Luckey v. Harris,* 896 F.2d 479 (11th Cir.1989) (per curiam) ("*Luckey II* "); *Harris v. Luckey,* 918 F.2d 888 (11th Cir.1990) ("*Luckey III* "); *Luckey v. Miller,* 929 F.2d 618 (11th Cir.1991) ("*Luckey IV* "); and *Luckey v. Miller,* 976 F.2d 673 (11th Cir.1992) ("*Luckey V* ").

In *Luckey I,* this Court reversed the district court's dismissal of the case. The district court had held that it lacked authority, on Eleventh Amendment grounds, to grant the relief sought. In *Luckey II,* this Court denied the defendants' suggestion of a rehearing *en banc.* Judge Edmondson, joined by three other judges, filed a dissenting opinion, in which he argued that the suggestion for a rehearing *en banc* should have been granted. He contended that the *Luckey I* panel's decision was wrong because it "disregard[ed] considerations of comity and federalism that underlie *Younger."* *Luckey II,* 896 F.2d at 479 (Edmondson, J., dissenting).

In *Luckey III,* we granted the appellant-defendants'

*Younger* itself described as a "sensitivity to the legitimate interests of both State and National Governments," *Younger,* 401 U.S. at 44, 91 S.Ct. at 750.

Since *Younger,* the Supreme Court and this Court have applied and expanded upon that abstention doctrine. In *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677-678, 38 L.Ed.2d 674 (1974), the Court, in an alternative holding, held that the district court had properly declined to provide equitable relief to plaintiffs who sought an injunction against various state officials, including state judges. The plaintiffs had alleged that the state judges had unconstitutionally: (1) set bond in criminal cases without regard to the facts of a case; (2) set sentences higher and imposed harsher conditions on black persons than white persons; and (3) required black persons, when charged with violations of city ordinances that carry fines and possible jail sentences if the fines cannot be paid, to pay for a trial by jury. *Id.* at 492, 94 S.Ct. at 674. The plaintiffs requested that the federal district court enjoin those practices, and the district court declined to do so.

In holding that the district court had properly declined to

_____

petition for permission to appeal, thus allowing this Court to review the district court's judgment on remand from *Luckey I.* In *Luckey IV,* we held that the law of the case had not precluded the district court on remand from *Luckey I* from dismissing the complaint based upon *Younger* abstention doctrine. Finally, in *Luckey V,* we summarily affirmed the district court's dismissal on *Younger* abstention grounds, and did so "on the basis of [the district court's] order," which we adopted in full and reprinted as an appendix. *Luckey V,* 976 F.2d at 673. In doing so, we cited with approval Judge Edmondson's dissent from *Luckey II. See Luckey V,* 976 F.2d at 678-79.

enjoin those practices, the Supreme Court stated that " "the principles of equity, comity, and federalism ... must restrain a federal court when asked to enjoin a state court proceeding.' " *Id.* at 499, 94 S.Ct. at 678 (quoting *Mitchum v. Foster,* 407 U.S. 225, 243, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972)); *see also Growe v. Emison,* 507 U.S. 25, 32, 113 S.Ct. 1075, 1080, 122 L.Ed.2d 388 (1993) (stating that "principles of federalism and comity" must underlie the discretion of courts of equity).  The Supreme Court emphasized that:

> An injunction of the type contemplated by respondents ... would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio,* just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in *Younger.*

*O'Shea,* 414 U.S. at 501, 94 S.Ct. at 679.  The Court held that "the "periodic reporting' system [that] ... might be warranted would constitute a form of monitoring of the operation of state court functions that is antipathetic to established principles of comity."  *Id.* at 501, 94 S.Ct. at 679 (footnote omitted).

Relying on both *Younger* and *O'Shea,* we held in *Luckey V,* that abstention was proper in a class action challenge to the adequacy of Georgia's indigent criminal defense system.  976 F.2d at 673. The plaintiffs had alleged unconstitutional systemic delays in the appointment of counsel in their criminal cases, which allegedly led to the inability of counsel to represent them adequately.  They had sought injunctive relief against the Governor of Georgia and all Georgia judges who preside over the criminal trials of indigent defendants.  Specifically, the plaintiffs had requested a federal injunction ordering the defendants to pay indigent-defense counsel

more, to provide counsel earlier in the criminal process, and to provide more defense services and expert resources. *Id.* at 676.

Affirming the district court's denial of injunctive relief in *Luckey V,* we rejected the plaintiffs' argument that *Younger* only bars federal courts from restraining ongoing state court prosecutions and does not bar prospective relief involving cases that are not yet pending. *Id.* at 677-78. Instead, we held that *Younger* required the federal district court to abstain because "a decree of the sort requested by the plaintiffs would, inevitably, interfere with every state criminal proceeding." *Id.* at 677. We also noted that the district court's abstention did not leave the plaintiffs without relief. The plaintiffs could raise their claims in the Georgia state court, *id.,* or could " "challenge the legality of their custody via federal habeas corpus, subject, of course, to prior exhaustion of state remedies.' " *Luckey II,* 896 F.2d at 482 (Edmondson, J., dissenting)[5] (quoting *Gardner v. Luckey,* 500 F.2d 712, 715 (5th Cir.1974), *cert. denied,* 423 U.S. 841, 96 S.Ct. 73, 46 L.Ed.2d 61 (1975)); *accord Luckey V,* 976 F.2d at 677.

In *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980), the Sixth Circuit affirmed the district court's dismissal on *Younger* abstention grounds of claims almost identical to the present ones. The plaintiffs, who were indigent fathers under state court orders to pay overdue child support, claimed that the state juvenile court judges routinely denied fathers the right to counsel and the right to due process during contempt hearings. As a result, they claimed

---

[5]The position Judge Edmondson took in his dissenting opinion in *Luckey II* became the position of this Court in *Luckey V.* See *supra* n. 4.

many indigent fathers were held in contempt, even though they could not afford to pay their purge amounts. The plaintiffs sought declaratory and injunctive relief "to ensure that the juvenile court followed basic due process." *Id.* at 2.

The Sixth Circuit held that the case was "legally indistinguishable" from *O'Shea,* and thus the district court's dismissal of the plaintiffs' requests for equitable relief was proper. *Id.* at 7-8. It emphasized "the state's interest in preserving the integrity of its contempt proceedings." *Id.* at 4. The Sixth Circuit reasoned that it did not matter that the plaintiffs only sought prospective equitable relief (rather than attempting to relitigate past proceedings), because the plaintiffs' requested relief constituted intrusive and undue federal interference with state proceedings. *Id.* at 6.

More recently, in *Hoover v. Wagner,* 47 F.3d 845, 852 (7th Cir.1995), the Seventh Circuit held that "broader equitable" principles required the federal district court to dismiss a suit in which the plaintiffs sought declaratory and injunctive relief against a state judge and a city chief of police. Specifically, the *Hoover* plaintiffs, who were two antiabortion protesters and a journalist sympathetic to their cause, sought: (1) a declaration from the federal district court that a state court injunction, which purportedly limited the antiabortion protesters' speech, was unconstitutional; and (2) an injunction against overenforcement of the state injunction by the city police. *Id.* at 846. The Seventh Circuit held that although neither the *Younger* doctrine nor the *Rooker-Feldman* doctrine squarely applied to the facts before it,

the broader equitable principles espoused by both of those doctrines did apply. *See also Samuels v. Mackell,* 401 U.S. 66, 69-73, 91 S.Ct. 764, 766-68, 27 L.Ed.2d 688 (1971) (extending *Younger* abstention doctrine to declaratory judgment actions).

The Seventh Circuit acknowledged in *Hoover* that many types of injunctions are issued as a matter of course. Even so, it warned that federal courts should proceed with caution when injunctive relief is "sought to be applied to officials of one sovereign by the courts of another." *Hoover,* 47 F.3d at 850. Such caution is necessary because federal injunctions against state officials can "impair comity, the mutual respect of sovereigns." *Id.* The court likened the plaintiffs' claims for equitable relief to those presented by the plaintiffs in *O'Shea,* and noted that in that case the Supreme Court described the requested relief as "intrusive and unworkable." *Hoover,* 47 F.3d at 851 (quoting *O'Shea,* 414 U.S. at 500, 94 S.Ct. at 678). We agree with the Seventh Circuit's reasoning in *Hoover*.[6]

---

[6]Although we reach the same conclusions as Judge Barkett does in her special concurrence, there are several points on which we disagree with that opinion. First, according to the plaintiffs' allegations, which we must accept as true at this stage, there is a pending state court proceeding. In particular, the plaintiffs allege that there is "a Continuing Writ which allows the Defendants to bring the Plaintiffs and members of the Plaintiff class before the court for civil contempt for *any* child support arrearage."

Second, we disagree with the position of the opinion that *O'Shea* and *Hoover* were not based upon principles of comity, as well as equity. In *O'Shea,* the Court discussed at length the affronts to comity that would occur if the plaintiffs were granted the requested federal equitable relief. 414 U.S. at 500-02, 94 S.Ct. at 678-79. The Court concluded that "[a]n injunction of the type contemplated by the [plaintiffs] ... would disrupt the normal course of proceedings in the state courts via resort to the federal

The equitable relief requested by the plaintiffs in this case is no less "intrusive and unworkable," and presents the same "unseeml[y]" encroachments on important principles of federalism and comity, *see Hoover,* 47 F.3d at 851, as did the relief requested in *Hoover* and in *O'Shea.* The plaintiffs want the federal district court to order state court judges to inform every parent who appears at a contempt hearing that if he is indigent, he has a

suit for determination of the claim *ab initio,* just as would the request for injunctive relief from an ongoing state prosecution against the federal plaintiff which was found to be unwarranted in *Younger." Id.* at 501, 94 S.Ct. at 679. Similarly, in *Hoover,* the Seventh Circuit concluded that "it would be an abuse of discretion, in light of the principles of equity *and comity* that underlie *Younger,* to grant the relief sought by the plaintiffs." 47 F.3d at 851 (emphasis added).

Third, even if there were no ongoing state proceeding, and even if *O'Shea* and *Hoover* did not deal with principles of comity, we still would hold that principles of comity, as well as equity, apply in this case. We would be required to do so under the prior precedent rule in order to be consistent with our decision in *Luckey V.* There, we concluded that because of the "comity concerns of *Younger* and *O'Shea,"* 976 F.2d at 678, even the limited injunctive relief requested by the plaintiffs "would inevitably set up the precise basis for future intervention condemned in *O'Shea," id.* at 679. Although we agree with the concurring opinion that our decision in *Ealy v. Littlejohn,* 569 F.2d 219 (5th Cir.1978), like our decision in *Luckey V,* is binding precedent, we disagree with the opinion's interpretation of *Ealy. Ealy* did not even mention *O'Shea,* and thus cannot be considered inconsistent with *Luckey V's* holding that *O'Shea* is an extension of *Younger. Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), which was issued before *Luckey V* and which the concurring opinion contends does not support our reasoning, explicitly states that even absent a pending state court proceeding, *Younger* principles may still apply when there are "important state interests" at stake. *See id.* at 705, 112 S.Ct. at 2216. In this case, as in *O'Shea,* "important state interests" are at stake—namely, the "state's interest in preserving the integrity of its contempt proceedings, as well as its domestic relations cases," *Parker v. Turner,* 626 F.2d 1, 4 (6th Cir.1980) (citations omitted).

right to court-appointed counsel.[7] They want the district court to order state judges to appoint counsel to all indigent parents appearing at a contempt hearing. The plaintiffs also want the district court to order state judges to inquire specifically about each parent's ability to pay the child support amount in arrears. As to this last request, we doubt that the plaintiffs would be satisfied if the district court simply ordered the state judges to make such inquiries, because the plaintiffs themselves concede that Florida law already requires the state judges to make such inquiries. *See* Pompey Supp.Br. at 9 ("[C]ourts in child support hearings are required to inquire into the parent's ability to pay before the parent is incarcerated."); *see also Andrews v. Walton,* 428 So.2d 663, 666 (Fla.1983). Instead, it appears that what the plaintiffs really want in this regard is for the district court somehow to force the state judges to conduct a more "thorough inquiry" into each parent's ability to pay, and somehow to force the state judges to follow what plaintiffs perceive to be the state's own laws and procedures.

Like the *Hoover* court, we think that "the difficulty of framing a useful injunction, when considered in conjunction with the affront to comity that such an injunction would constitute" *Hoover,* 47 F.3d at 851, counsels against federal court intervention. During oral argument, counsel for the plaintiffs so much as acknowledged the inherent difficulty in framing the

---

[7]At oral argument, the plaintiffs seemed to suggest that they also wanted state courts ordered to appoint counsel for all fathers who alleged that they were indigent at the time of the contempt hearings, in order to assist them in proving their indigency.

requested equitable relief when he struggled unsuccessfully to provide us with the specifics of how the injunction he sought should read.

Even if the district court were able to frame such an injunction in a satisfactory way, it would be unwise to do so. It would be unwise, because such an injunction would be "at once an insult to the [state judges] ... and an empty but potentially mischievous command to these officials to avoid committing any errors." *Hoover,* 47 F.3d at 851. It would ensnare the federal district court in relitigation of the state contempt proceeding issues, which is the kind of mischief *O'Shea* warned against. *See O'Shea,* 414 U.S. at 501, 94 S.Ct. at 679 ("An injunction of the type contemplated by respondents ... would disrupt the normal course of proceedings in the state courts via resort to the federal suit for determination of the claim *ab initio*...."). If the injunction plaintiffs seek were issued, any parent who was held in contempt despite his alleged indigency could and probably would seek relief in the federal district court on grounds that the state judge had violated the federal injunction. And what would the federal district court do? Would it make an independent determination of that parent's indigency in order to determine if the injunction had been violated? And if the district court concluded that the injunction had been violated, what would it do then? In his dissent in *Luckey II,* 896 F.2d 479 (11th Cir.1989), which was ultimately adopted as the position of the Court in *Luckey V,*[8] Judge Edmondson, joined by three other judges of this Court,

---

[8]*See supra* n. 4.

considered such a scenario, and stated:

> When we embark on this new course, we must prepare to face this unpleasant question: If a state judge does not obey a district judge's injunction, are we willing to jail the state judge for contempt? Avoidance of this unseemly conflict between state and federal judges is one reason for *O'Shea* and *Younger.*

*Id.* at 482; *cf. Hoover,* 47 F.3d at 851 ("[I]f a plaintiff were erroneously convicted for violating the state court injunction, would that put the prosecutor, the judge, and, if there were a jury, the jury in contempt of the federal injunction?").

Those are some of the problems that would arise if the federal district court were to arrogate to itself the role of overseer of Broward County's child support enforcement proceedings. Considerations of those problems vindicates the wisdom of the Framers in reserving to only one federal court, the Supreme Court, the authority to review state court proceedings. Neither federal district courts nor federal courts of appeal may usurp the authority and function of the Supreme Court and state appellate courts to review state court proceedings. The state courts are courts of equal dignity with all of the federal "inferior courts"—to use the Framers' phrase—and state courts have the same duty to interpret and apply the United States Constitution as we do. If the state courts err in that respect, the remedy lies in review by the Supreme Court, the same place a remedy may be found if we err. Federal "inferior courts" have no more business issuing supervisory injunctions to safeguard federal constitutional rights in state court proceedings than state courts have issuing such injunctions to safeguard federal constitutional rights in federal court proceedings.

Even so, the plaintiffs contend that the federal district court should have granted their requested relief because of the decision in *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), upholding a federal district court's injunction against state court judges. In *Gerstein,* the plaintiffs challenged in the district court Florida's pretrial detention of persons without a judicial determination of probable cause. They asked the district court to issue an injunction, which would require a judicial determination of probable cause, against several county officials, including county judges. The Court upheld the district court's judgment in favor of the plaintiffs on the merits and the issuance of the requested injunction. The Court distinguished *Younger* in a footnote, which stated that *Younger* did not apply because the issue raised by the plaintiffs "could not be raised in defense of the criminal prosecution," and thus presumably could not be raised at all in the state courts. *Id.* at 107 n. 9, 95 S.Ct. at 860 n. 9; *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 13.4, at 755 n. 24 (1994).

*Gerstein* is distinguishable from this case. The permissibility of federal equitable relief in *Gerstein* was based upon the absence of an adequate state forum for raising the issue. *See Gerstein,* 420 U.S. at 107 n. 9, 95 S.Ct. at 860 n. 9; *see also Parker v. Turner,* 626 F.2d 1, 9 (6th Cir.1980). By contrast, in this case, plaintiffs had state remedies available. The plaintiffs could have raised their claims during their contempt hearings. If unsuccessful, they could have appealed the adverse holdings to the Florida District Court of Appeals, to the Florida Supreme Court,

and, ultimately, to the United States Supreme Court. *See Robbins v. Robbins,* 429 So.2d 424 (Fla. 3d DCA 1983) (holding in case almost identical to the allegations of the present case that the plaintiffs were deprived of due process of law by cursory, assembly-line contempt hearings). Alternatively, the plaintiffs could have sought habeas corpus relief in the state court system. One of the plaintiffs, Mr. Pompey, did successfully seek such relief. Pursuant to his habeas petition, the Florida District Court of Appeals instructed the circuit court to hold an evidentiary hearing to determine Mr. Pompey's ability to pay his purge amount, which resulted in the trial court reducing that amount from $22,100.00 to $212.00. All of the plaintiffs could have obtained state habeas relief, as Mr. Pompey did.

Notwithstanding the opportunities they had to raise their claims through the state court system, the plaintiffs still insist that they lacked a meaningful opportunity to be heard in the state courts. In particular, they contend that the Florida Supreme Court's decision in *Andrews v. Walton,* 428 So.2d 663 (Fla.1983), forecloses them from raising their federal constitutional claims in the Florida state courts. In *Andrews,* the court held that:

> [T]here are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.

*Id.* at 666. Although *Andrews* demonstrates that Florida courts have refused to provide court-appointed counsel in child custody enforcement proceedings, we disagree with the conclusion that the plaintiffs draw from that. Contrary to their contention, for

abstention purposes, whether a claim would likely be successful on the merits in the state court is not what matters. Instead, what matters is whether the plaintiff is *procedurally* prevented from raising his constitutional claims in the state courts, from which a certiorari petition can be filed seeking review on the merits in the United States Supreme Court. *See Moore v. Sims,* 442 U.S. 415, 432, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979) (holding that the federal plaintiff has burden to show "that state procedural law barred presentation of [its] claims"); *cf. Engle v. Isaac,* 456 U.S. 107, 130, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982) (in federal habeas proceedings perceived futility on the merits does not excuse failure to raise claim in state court). The plaintiffs in *Gerstein* were procedurally prevented from making their claims; the plaintiffs in this case were not.[9] Accordingly, we reject the plaintiffs' broad construction of *Gerstein,* which would make *Gerstein* the exception that swallowed the rule of *Younger* and the holding of *O'Shea.*[10]

For all of these reasons, the district court's judgment denying equitable relief against the defendant judges is due to be

---

[9]Even if we were to accept the plaintiffs' characterization of an opportunity to be heard as focusing on the possibility of success on the merits, rather than whether they had a procedural opportunity to raise and adjudicate the claim, that argument would apply only to their claim concerning court-appointed counsel. It would not apply to their other claims, which they do not argue would be foreclosed on the merits by Florida law.

[10]As a last resort, the plaintiffs argue that even if *Younger* and its progeny, rather than *Gerstein,* applies, we should still issue the requested equitable relief under the "extraordinary circumstances" exception to the *Younger* doctrine. 401 U.S. at 53-54, 91 S.Ct. at 755. However, the plaintiffs' arguments in this regard are redundant, and merit no further discussion.

affirmed.

B. Claims Against the County Defendants and Against Ms. Fink in Her
   Individual Capacity

Still remaining for our review are the plaintiffs' claims against the County defendants (Broward County and the Support Division) and against Ms. Fink, the director of the Support Division, in her individual capacity.[11] The plaintiffs seek equitable relief and compensatory damages from the County defendants, and seek compensatory and punitive damages from Ms. Fink.[12] The district court dismissed the claims against the County defendants on grounds that they were not "proper defendants," and granted summary judgment in favor of Ms. Fink on absolute, and alternatively, qualified immunity grounds.

The plaintiffs claim that the County defendants and Ms. Fink have violated their Sixth and Fourteenth Amendment rights in several ways. The plaintiffs allege that the Support Division[13] and Ms. Fink have violated their rights by: (1) discouraging individuals from requesting court-appointed counsel; (2) referring to incarceration as "punishment for contempt"; (3) submitting faulty or insufficient evidence; and (4) allowing less than five

_____

[11]Although these claims were brought by only three of the five plaintiffs—Mr. Peters, Mr. Atlas, and Mr. Lashbrook—we will still refer to them as "the plaintiffs."

[12]It is doubtful that federal district courts may dismiss claims for damages under abstention principles. *See Quackenbush v. Allstate Ins. Co.,* --- U.S. ----, ----, 116 S.Ct. 1712, 1727-28, 135 L.Ed.2d 1 (1996).

[13]For purposes of clarity, we refer to the Support Division as separate from the County in this discussion, even though, as we stated *supra* n. 2, the Division is not a legal entity separate from the County.

minutes to be spent on each case. Similarly, the plaintiffs allege that Broward County has violated their rights by "permitting and tolerating" the Support Division and Ms. Fink to engage in the allegedly unconstitutional practices listed above. They also allege that Broward County has violated their rights by failing to appoint counsel to indigent fathers.

With regard to the plaintiffs' claims against the Support Division and against Ms. Fink in her individual capacity, we hold that those claims were due to be dismissed on grounds that they failed to state a claim upon which relief may be granted. Even if we assume that the plaintiffs' complaint has sufficiently alleged that the plaintiffs were personally discouraged from seeking court-appointed counsel and that it was their incarceration that was referred to as "punishment for contempt," their claims are still inadequate. The Constitution does not guarantee that someone incarcerated in a contempt proceeding will not have their incarceration referred to as "punishment for contempt." Similarly, there is nothing in the Constitution that gives parents appearing in child support contempt hearings a right not to be discouraged in some vaguely stated fashion, from seeking court-appointed counsel, even where they have such a right to counsel. In addition, because it is the duty of the courts, rather than the Support Division or Ms. Fink, to determine whether the evidence is sufficient to hold a parent in contempt as well as to determine how much time to spend on each case, *see, e.g.,* Fla.Stat.Ann. § 61.14(5) (West 1988 & Supp.1996); Fla.R.Jud.Admin., Rule 2.050(b) (West 1996); *Rodriquez v. Thermal Dynamics, Inc.,* 582 So.2d 805 (Fla. 3d DCA

1991), the plaintiffs fail to state a claim against the Support Division and Ms. Fink based upon those allegations.[14]

For those reasons, we also hold that the plaintiffs' claim against Broward County stemming from its "tolerance" of the above practices of the Support Division and Ms. Fink fails to state a claim upon which relief may be granted. Because the Support Division and Ms. Fink did not violate the constitutional rights of the plaintiffs, it follows that Broward County's permitting and tolerating the Support Division's and Ms. Fink's practices did not violate the constitutional rights of the plaintiffs, either. In addition, Broward County had neither the duty nor the authority to appoint counsel for the plaintiffs; that duty and authority was the courts' alone. *See, e.g., Hamill v. Wright,* 870 F.2d 1032 (5th Cir.1989) (holding in case similar to present one that only state court has duty and authority to appoint counsel to indigent parents, and that county has no authority over state courts). Accordingly, the plaintiffs' claim in that regard were due to be dismissed.

---

[14]Alternatively, the plaintiffs' requests for equitable relief against the Support Division were due to be dismissed on *Younger* abstention grounds for reasons similar to those discussed with regard to the defendant judges *supra* part II.A.

The district court held that Ms. Fink was entitled to qualified immunity insofar as the claims were asserted against her in her individual capacity, and that may well be correct. However, in view of our conclusion that the claims against her in both her individual and official capacities are due to be dismissed for the reasons stated in this opinion we need not reach the qualified immunity issue. Therefore, we will vacate the district court's grant of summary judgment on qualified immunity grounds to Ms. Fink in her individual capacity and instruct the district court to dismiss all of the claims against her in both her capacities.

## III. CONCLUSION

We AFFIRM the district court's order of dismissal of the claims against the County defendants and the defendant judges. We VACATE the district court's grant of summary judgment to Ms. Fink in her individual capacity, and REMAND with directions that the district court dismiss all of the claims against her for the reasons stated in this opinion.

BARKETT, Circuit Judge, specially concurring:

I concur fully in the majority opinion except as to the majority's treatment of *Younger* abstention in Part IIA in upholding the district court dismissal of the claims against the defendant judges. I write separately to clarify that in my opinion *Younger* does not apply here because there is no pending state proceeding. In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that federal courts should abstain from enjoining *pending* state criminal court proceedings. *Id.* at 53, 91 S.Ct. at 755. The Court's holding in *Younger* was based on two principles: comity and equity. 401 U.S. at 44, 91 S.Ct. at 750. The first of these principles, and the most predominant in *Younger,* is the notion of comity, which is "a recognition of the fact that the entire country is made up of a union of separate state governments" whose functions should be accorded respect. This concept of "Our Federalism," which played a role in the ratification of the Federal Constitution and is contained therein, represents "a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to

vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States."  *Id.,* at 42-46, 91 S.Ct. at 750-51.  Additionally, *Younger* noted "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."  401 U.S. at 43-44, 91 S.Ct. at 750;

The Supreme Court subsequently extended *Younger* abstention to the civil context when important state interests are challenged, *see, e.g., Middlesex County Ethics Commission v. Garden State Bar Assn.,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982);  *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.,* 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986), and when the relief sought in federal court was declaratory, rather than injunctive in nature.  *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).  But the Supreme Court has never applied  *Younger* abstention when no state proceeding was pending because the comity concerns (though not necessarily the equity principles) that underlie it simply are not implicated.  *See Ankenbrandt v. Richards,* 504 U.S. 689, 705, 112 S.Ct. 2206, 2216, 119 L.Ed.2d 468 (1992) ("Absent any pending proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous.");[1]  *see also Doran v. Salem Inn, Inc.,* 422

---

[1]I differ from the majority's reading of *Ankenbrandt* as holding that *Younger* principles apply *either* when there is a pending state proceeding *or* "important state interests" are

U.S. 922, 930, 95 S.Ct. 2561, 2567, 45 L.Ed.2d 648 (1974) (holding that when there is no pending state proceeding, individuals may receive a preliminary injunction because it does not disrupt the state courts and because there is no available forum in which to raise the constitutional claims); *Hoover v. Wagner,* 47 F.3d 845, 848 (7th Cir.1995) ("The [*Younger*] doctrine is inapplicable here because none of the plaintiffs is [presently] being prosecuted for anything."); *Parker v. Turner,* 626 F.2d 1, 10 (6th Cir.1980) (Merritt, J., concurring) (stating that the existence of a pending state proceeding is a crucial part of the *Younger* abstention doctrine); 17A Wright, Miller & Cooper, § 4253, at 212 ("*Younger*

---

implicated.  No prior case has so interpreted *Younger* abstention. *Younger* principles apply when there is a pending state proceeding *and* that proceeding implicates important state interests. *See, e.g., Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 431-32, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *see generally* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure:  Jurisdiction 2d § 4253, at 212 (2d ed. 1988). *Ankenbrandt* itself so held.  *Ankenbrandt* involved a diversity action brought by a mother on behalf of her children alleging physical and sexual abuse of the children by the children's father (the mother's former husband) and the husband's female companion.  To support the majority's reading of *Ankenbrandt,* therefore, *Ankenbrandt* necessarily would have to also be read as holding that such "domestic relations" proceedings are not an important state interest, because the Court holds in *Ankenbrandt* that *Younger* principles do not apply.  In fact, the Court in *Ankenbrandt* merely determined whether there was a pending state proceeding or not.  When it determined there was not, the Court's analysis ended with the holding that *Younger* did not apply, stating that "[a]bsent any pending proceeding in state tribunals, therefore, application by the lower courts of *Younger* abstention was clearly erroneous."  If the Court's holding were as the majority says it is, finding that there was not a pending state proceeding would not end the inquiry;  the Court would then have gone on to determine whether domestic relations is an "important state interest," which it invariably is.  The Court did not embark on this second determination, however, and ended its *Younger* analysis by concluding that *Younger* abstention did not apply because there was no state proceeding.

*v. Harris* and its companion cases went to great pains to make it clear that the rules there laid down applied only if there was a prosecution pending in state courts at the time the federal proceeding was begun."); Erwin Chemerinsky, Federal Jurisdiction § 13.3, at 736-37 (2d ed. 1994) ("The prevailing view in the lower courts is that permanent injunctions are allowed in the absence of ongoing state proceedings.... [T]he rationale of *Younger* is that if there are state proceedings, constitutional claims should be raised there. But if no such proceedings are pending, federal court relief is appropriate."). Moreover, binding precedent in this circuit holds that *Younger* does not apply when there is not a pending state proceeding. *Ealy v. Littlejohn,* 569 F.2d 219, 232 (5th Cir.1978) ("when there will be no interruption of ongoing state criminal proceedings, and thus no threat to proper federal-state relations, *Younger* does not bar federal intervention so long as the plaintiff can satisfy the requirements of federal jurisdiction, and can demonstrate (i) exceptional circumstances and (ii) that an injunction is necessary for adequate protection of constitutional rights.").[2]

Because there is no pending state proceeding in this case, the notions of comity and federalism on which *Younger* primarily relied are not implicated here.[3] *Younger* "Our Federalism" abstention,

---

[2]*Luckey V* does not cite or attempt to distinguish this circuit's prior precedent in *Ealy.* Nevertheless, the same prior precedent rule on which the majority relies in arguing that *Luckey V* controls our analysis here must apply with equal force to *Ealy.*

[3]Plaintiffs in the present case do allege that they are under a continuing writ which allows the defendants to bring plaintiffs before the court for civil contempt for any child

therefore, does not apply here. *O'Shea v. Littleton,* 414 U.S. 488, 499, 94 S.Ct. 669, 677-678, 38 L.Ed.2d 674 (1974); *Ealy,* 569 F.2d at 233 ("[T]here was no state prosecution pending against these plaintiffs when they instituted the present suit, thus making the *Younger* holding inapplicable."); *Luckey v. Harris,* 896 F.2d 479, 479 (11th Cir.1989) (Edmondson, J., dissenting); *Hoover,* 47 F.3d at 848; *see also* Chemerinsky § 13.3, at 748. Nevertheless, the general equitable principles reiterated in *Younger* do apply here.

In applying these general equitable principles to the facts of this case, I reach the same result the majority does. However, I conclude that the district court properly dismissed plaintiffs claims against the judges not because *Younger* abstention applies, but because equitable relief is inappropriate here because the plaintiffs lack the elements necessary for general equitable relief: an inadequate remedy at law and irreparable injury. Neither of these elements are present because the plaintiffs are not barred from raising their claims during the course of any future state court proceedings they may be involved in, and challenging an adverse ruling through the state appeals process, and invoking state and federal habeas avenues if they do not otherwise succeed.[4] Unlike in *Ealy,* therefore, where an injunction issued because there was no interruption of ongoing state

support arrearage. Because a plaintiff would have to fail to pay child support to again be brought before the court, I would not consider such a writ to constitute an ongoing state proceeding for *Younger* abstention purposes.

[4]As did one of the plaintiffs in this case, Mr. Pompey, who successfully filed a petition for a writ of habeas corpus with the Florida District Court of Appeals that resulted in the reduction of his purge amount from $22,100.00 to $212.00.

proceedings, exceptional circumstances were present, and an injunction was necessary for adequate protection of constitutional rights, here, the last requirement is not satisfied; an injunction is *not* necessary for adequate protection of constitutional rights because plaintiffs are not barred from raising their claims during any future state court proceeding. *See* 569 F.2d at 232.

The Supreme Court recognized these principles in *O'Shea.* In *O'Shea,* the Court held that the plaintiffs lacked standing to bring their claim because it was speculative that they would again commit a crime and be brought before the municipal court. But the Court went on to state that, even if plaintiffs had standing (thereby allowing the Court to reach the merits of the injunction sought), it would not grant the injunctive relief plaintiffs requested. The Court stated that, although *Younger* itself did not apply because the plaintiffs did not allege any pending state proceedings against them, general equitable principles recognized in *Younger* would apply where a federal court is called upon to monitor the future actions of a state court. *Id.* at 500.

The majority relies on *Parker v. Turner,* 626 F.2d 1 (6th Cir.1980), for support for its application of *Younger* here. *Parker* factually is similar to the present case, but *Parker* strains to create a third extension of *Younger* abstention that applies where, as in our case, no state proceeding is pending. As I stated previously, the Supreme Court has never recognized such an extension and, in *Ankenbrandt,* expressly rejected it. 504 U.S. at 704, 112 S.Ct. at 2215 ("[a]bsent any pending proceeding in state tribunals, therefore, application by the lower courts of *Younger*

abstention was clearly erroneous.").

The majority also relies on *Hoover v. Wagner,* 47 F.3d 845, 852 (7th Cir.1995), to support its reasoning that *Younger* applies in this case, but *Hoover* acknowledges that "the [*Younger*] doctrine is inapplicable here because none of the plaintiffs is [presently] being prosecuted for anything." *Id.* at 848. *Hoover* goes on to uphold the dismissal on the "broader equitable principles" reiterated in *Younger,* but not the comity and federalism principles on which the *Younger* abstention doctrine is premised. In short, like *Hoover,* my analysis would rest solely on general *equitable* principles, to wit, because nothing prohibits plaintiffs from raising their claims in a future state court proceeding, should one arise, they lack the elements necessary for equitable relief: an inadequate remedy at law and irreparable injury.